[Civ. No. 65031. Second Dist., Div. Two. June 8, 1982.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
ROBERT MARTIN, Real Party in Interest.

COUNSEL

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Suzanne Person, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Susan L. Wolk for Real Party in Interest.

OPINION

**COMPTON, J.**—The People of the State of California, represented by the District Attorney of Los Angeles County, seek a writ of mandate to compel the superior court of that county to vacate an order dismissing their petition filed pursuant to Welfare and Institutions Code section 6316.2, to extend the commitment of one Robert Martin (RPI) as a mentally disordered sex offender (MDSO). We grant the petition.

RPI was convicted in 1975 of a violation of Penal Code section 288[1]

---

[1]Penal Code section 288 provided in 1975: "Any person who shall wilfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in part one of this code upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the State prison for a term of from one year to life."

for sexually molesting a four-year-old female child. He had been charged with additional counts of kidnaping and oral copulation, which charges were dismissed upon his conviction for violating Penal Code section 288. RPI was found to be a MDSO under the provisions of then Welfare and Institutions Code section 6300 et seq., and committed to the Department of Mental Hygiene.

At the time of RPI's conviction, the punishment for a violation of Penal Code section 288, as noted, was one year to life under the then existing Indeterminate Sentence Law, and under Welfare and Institutions Code section 6316 a commitment as an MDSO was for an indeterminate period.

With the advent of the determinate sentence law in 1976, the punishment for violating Penal Code section 288 was fixed at three, four or five years. Those periods were subsequently increased in 1978 to three, five or seven years, and in 1981 to three, six or eight years.

Also as a result of the adoption of the determinate sentence law, and responsive to the holding of the California Supreme Court in *In re Moye* (1978) 22 Cal.3d 457 [149 Cal.Rptr. 491, 584 P.2d 1097], the Legislature in 1977 added section 6316.1 to the Welfare and Institutions Code to provide that a person committed as an MDSO could not be confined for a period longer than the maximum term for which he could have been sentenced for the crime. That period was to be set by the trial court for persons who committed offenses after July 1, 1977, and by the Community Release Board (later the Board of Prison Terms) for persons who committed offenses before that date.

The record before us does not disclose whether or at what level a maximum term of commitment has been set for the RPI. The People concede, however, that RPI has been confined beyond the maximum term possible under the particular circumstances of his conviction and if his term cannot be extended, he must be released.

Simultaneously with the enactment of Welfare and Institutions Code section 6316.1, the Legislature enacted section 6316.2 which provided that a person could be committed as an MDSO beyond the maximum period provided under Welfare and Institutions Code section 6316.1, upon a finding that such person had committed a felony "sex offense" as described in the statutes and "suffers from a mental disease, defect or disorder and as a result of such mental disease, defect or disorder is predisposed to the commission of sexual offenses to such a degree that

he presents a substantial danger of bodily harm to others." The statute further provided that amenability to treatment was not required for a finding that such person qualified for an extended commitment.

Such extended commitments were obtained by the filing of a petition no later than 90 days before the expiration of the original commitment and were initially to be for a period of one year from the expiration of the original commitment. That length of extension was increased to two years by a 1979 amendment.

In 1979, RPI's commitment was extended for one year and in 1980, it was extended for another two years. On December 29, 1981, the People petitioned to extend RPI's commitment for another two years. A hearing on that petition would more normally have been held sometime early in 1982, prior to the expiration date of the previous commitment.

Effective January 1, 1982, the Legislature enacted Penal Code section 1364, which provides in pertinent part: "Notwithstanding any other provision of law, when any person is convicted of a sex offense against a person under the age of 14 years or of a sex offense accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person there shall be no hearing to determine whether the person is a mentally disordered sex offender.

"The court after imposing sentence for such a conviction shall order the delivery of the convicted person to the Department of Corrections. The Department of Corrections shall inform such convicted persons of the state hospital program established pursuant to this section." The state hospital program referred to is a voluntary program which is available to individuals who meet certain criteria.

Also effective January 1, 1982, the Legislature repealed the various statutes which created the status of MDSO and provided the procedure for their commitment and treatment. (Welf. & Inst. Code, §§ 6300-6330.) Simultaneously with the repeal of those provisions, the Legislature enacted legislation which, for certain specified sex offenses, provided increased mandatory prison terms (Pen. Code, §§ 288, 1364, 1203.065, 1203.66) and enhancements (Pen. Code, §§ 667.5, 667.51, 667.6).

On January 22, 1981, RPI filed a motion to dismiss the petition for extension on the grounds that the repeal of Welfare and Institutions

Code section 6316.2 and the enactment of Penal Code section 1364 bar any further extension. The trial court granted the motion and these proceedings ensued.

Statutes of 1981, chapter 928, the legislative bill which effected the repeal of the MDSO provisions of the Welfare and Institutions Code, contained the following: "SEC. 3 Nothing in this act shall be construed to affect any person under commitment [as an MDSO] under Article I (commencing with Section 6300) of Chapter 2 of Part 2 of Division G of the Welfare and Institutions Code prior to the effective date of this act. It is the Legislature's intent that persons committed as mentally disordered sex offenders and persons whose terms of commitment are extended under the provisions of Section 6316 of the Welfare and Institutions Code shall remain under these provisions until the commitments are terminated and the persons are returned to the court for resumption of the criminal proceedings.

"The Legislature finds and declares that the purposes of the mentally disordered sex offender commitment have been to provide adequate treatment of those offenders, adequate controls over those persons by isolating them from a free society, and to protect the public from repeated commission of sex crimes. In making the repeal of mentally disordered sex offender commitment procedures prospective only, the Legislature finds and declares that it is necessary to retain persons under this commitment who committed their crimes before the effective date of this enactment in order to have proper control over these persons and to protect society against repeated commission of sex crimes and that other enactments in the 1979-80 Regular Session of the Legislature and the 1981-82 Regular Session of the Legislature would yield prison terms which would provide this protection to society without the need to retain the mentally disordered sex offender commitment.

"SEC. 4 In repealing the mentally disordered sex offender commitment, the Legislature recognizes and declares that the commission of sex offenses is not in itself the product of mental diseases. It is the intent of the Legislature that persons convicted of a sex offense after the effective date of this section, who are believed to have a serious, substantial, and treatable mental illness, shall be transferred to a state hospital for treatment under the provisions of section 2684 of the Penal Code."[2]

---

[2]Penal Code section 2684 provides: "If, in the opinion of the Director of Corrections, the rehabilitation of any mentally ill, mentally deficient, or insane person confined in a

Legislative Counsel's analysis of chapter 928 of the 1981 Statute: "This bill would repeal the provisions relating to mentally disordered sex offender commitment procedures. The bill would also provide that the provisions of the bill shall not be construed to affect any person under commitment prior to the effective date of the bill."

The legislative intent and the reasons therefor could not have been more clearly expressed. Persons *convicted* after January 1, 1982, of the specified heinous sex offenses are to be dealt with in a more punitive fashion than was the case previously. On the other hand, in order to insure against the immediate release of persons previously committed as MDSOs and who still pose a substantial danger to society, the Legislature specifically declared that these persons should continue to be subject of the provisions of Welfare and Institutions Code sections 6316 and 6316.2.[3]

The use of the phrase in chapter 928, section 3 of the 1981 Statutes, "persons whose terms of commitment *are* extended" instead of "persons whose terms *have been* extended" indicates clearly that the Legislature envisioned future extensions rather than simply the expiration of past extensions.

Although the question has not been raised in these proceedings, for the guidance of the trial court, we think it appropriate to point out that the critical event in applying the new statute (Pen. Code, § 1364) is conviction rather than commission of the offense.

Penal Code section 1364 provides in effect that persons who are *convicted* of the prescribed offense after the effective date of the statute shall not be subject to an MDSO commitment but shall instead be committed to the Department of Corrections.

---

state prison may be expedited by treatment at any one of the state hospitals under the jurisdiction of the State Department of Mental Health or the State Department of Developmental Services, the Director of Corrections, with the approval of the Board of Prison Terms for persons sentenced pursuant to subdivision (b) of Section 1168, shall certify that fact to the director of the appropriate department who shall evaluate the prisoner to determine if he would benefit from care and treatment in a state hospital. If the director of the appropriate department so determines, the superintendent of the hospital shall receive the prisoner and keep him until in the opinion of the superintendent such person has been treated to such an extent that he will not benefit from further care and treatment in the state hospital."

[3]There is no question here that the defendant is still a dangerous person. The doctors, as well as the defendant, all agree that there is a danger of his repeating his offense.

By the same token, the legislation providing for prospective only repeal of the MDSO procedure speaks in terms of *retaining* persons under previously ordered *commitments*.

■ RPI's argument in seeking dismissal of the petition to extend his commitment is that it is unfair and a denial of equal protection of the law to treat persons convicted prior to January 1, 1982, more harshly than persons convicted thereafter. The argument goes that persons committed subsequent to the critical date face a fixed and determinate period of confinement while persons in RPI's situation face the possibility of an indefinite confinement. We disagree.

In terms of penal sanctions for the crime of which he was convicted, RPI has benefited in the amelioration of the sentence from that of one year to life to the much lesser determinate sentences now applicable. Hence a finding that he is no longer a danger will, if and when made, result in his immediate release.

He cannot invoke the doctrine of *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948], to free him from commitment until such finding is made. *In re Estrada, supra*, held essentially that when the Legislature lessens the *punishment* for a particular crime without specifying a retroactive application, it nevertheless intends that the lesser punishment shall apply wherever it is constitutionally permissible. Here, however, the Legislature has specifically declared its intent that the new legislative scheme shall apply prospectively only. (Also see Pen. Code, § 3.)

Further we are not confronted with an ameliorative change in penal sanctions. We are dealing with a large group of persons[4] who have been *civilly* committed to a medical facility as MDSOs on the basis of their having committed certain heinous sex offenses, and on the further basis of persuasive psychiatric opinion that they are suffering from a mental disorder which predisposes them to commit such offenses and constitute them a danger to society.

The fact that the Legislature has determined that, in the future, society's best protection against these types of sex crimes lies in a purely penal handling of the offender augmented by a limited program of ther-

---

[4]Statistics indicate that approximately 1,100 persons are presently confined as MDSOs.

apy, does not render persons such as RPI any less dangerous nor does it lessen society's need for protection against such persons.

Prior to the repeal of the Welfare and Institutions Code sections 6300 through 6330, not all persons who were convicted of these types of sex offenses were committed as MDSOs. Some convicted persons were simply committed to the Department of Corrections to serve sentences as fixed by the sentencing court or the Board of Prison Terms as the case may be. The mere fact that after January 1, 1982, *all* persons so convicted will be committed to the Department of Corrections does not alter the situation of persons previously committed as MDSOs.

RPI's contention here is thus identical to the equal protection argument that was advanced in *People* v. *Superior Court* (*Rigg*) (1978) 80 Cal.App.3d 407 [145 Cal.Rptr. 711]; *People* v. *Lakey* (1980) 102 Cal. App.3d 962 [162 Cal.Rptr. 653], and *People* v. *Poggi* (1980) 107 Cal. App.3d 581 [165 Cal.Rptr. 758]. In each of those cases persons committed as MDSOs, and whose commitments were extended pursuant to Welfare and Institutions Code section 6316.2, each claimed, as the RPI does here, that such extension violated the doctrine of equal protection of the law because persons committed to the Department of Corrections after being convicted of identical offenses were not subject to extended commitments.

The holding in each of these cases is best stated in *People* v. *Poggi, supra*, at pages 591-592 as follows: "Thus there is no reason to find, as argued by appellant, that Welfare and Institutions Code section 6316.2 as interpreted by the Legislature in subdivision (j) thereof, would violate any constitutional guarantees against cruel or unusual punishment, denial of due process of law, or denial of equal protection of the law. Although appellant's commitment can be extended under section 6316.2, while the term of a prisoner in a state prison cannot, we find no denial of equal protection in such procedure. As the Legislature has recognized the state has a compelling interest in preventing the premature release of dangerous persons.... [T]he prisoner and the hospital patient are not similarly situated in their conditions of confinement, and the Legislature can constitutionally choose to provide that a prisoner who has served his term of punishment in prison shall be released, but that a dangerous patient confined to a hospital is subject to the extension of his commitment whether or not he is found to be amenable to treatment."

Let a peremptory writ of mandate issue commanding the trial court to vacate its order of February 4, 1982, dismissing the People's petition and to reinstate that petition and conduct a hearing pursuant to the provisions of former Welfare and Institutions Code section 6316.2. The alternative writ is discharged.

Roth, P. J., and Beach, J., concurred.

The petition of real party in interest for a hearing by the Supreme Court was denied August 4, 1982. Newman, J., was of the opinion that the petition should be granted.