[No. S105225. July 21, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDRE RENE FLOYD, Defendant and Appellant.

**182**

COUNSEL

Conrad Petermann, under appointment by the Supreme Court, for Defendant and Appellant.

Marylou Hilberg for Tommy Lee Fryman as Amicus Curiae on behalf of Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Stan Cross and Patrick J. Whalen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BAXTER, J.—** ■ In this case we must decide whether Proposition 36, the Substance Abuse and Crime Prevention Act of 2000, applies to defendants who were sentenced prior to the act's effective date of July 1, 2001, but whose judgments were not yet final as of that date. We conclude that the act's saving clause—which states that "[e]xcept as otherwise provided, the provisions of this act shall become effective July 1, 2001, and its provisions shall be applied prospectively" (Prop. 36, § 8, as approved by voters, Gen. Elec. (Nov. 7, 2000) (Proposition 36), reprinted at 51 West's Ann. Pen. Code (2003 supp.) foll. § 1210, p. 221)—indicates the act was not intended to apply retroactively to this subset of cases. We also reject defendant's alternative claim that the failure to accord retroactive effect to Proposition 36 would violate his state and federal right to equal protection. We therefore affirm the Court of Appeal.

## BACKGROUND

On April 30, 2000, Bakersfield police responded to the reported natural death of defendant's long-term girlfriend. Defendant was distraught and crying. At some point, while standing near the body of his girlfriend, defendant began a sustained bout of coughing. Officer Damacio Diaz saw a small plastic baggie fly out of defendant's mouth and land on the deceased.

As soon as it landed, defendant grabbed the baggie and shoved it underneath the body. Officer Diaz retrieved the baggie, which contained 0.25 grams of cocaine.

A jury convicted defendant of possession of cocaine (Health & Saf. Code, § 11350, subd. (a)) and found he had five prior felony convictions within the meaning of the "Three Strikes" law: two attempted robberies and an assault with a deadly weapon causing great bodily injury on October 21, 1981; a burglary on October 30, 1984; and a burglary on January 7, 1985. On November 9, 2000, the trial court sentenced defendant to a third strike term of 25 years to life.

A divided panel of the Court of Appeal affirmed in an opinion published in part.

## PROPOSITION 36

On November 7, 2000, two days before defendant was sentenced, California voters passed Proposition 36, the Substance Abuse and Crime Prevention Act of 2000. Proposition 36 amended state law to require that certain adult drug offenders receive probation, conditioned on participation in and completion of an appropriate drug treatment program, instead of receiving a prison term or probation without drug treatment. (Pen. Code, § 1210.1.)

Under new Penal Code section 1210.1, subdivision (a), a defendant convicted of a nonviolent drug possession offense "shall" receive probation, provided the defendant is not rendered ineligible under subdivision (b). A court may not impose incarceration as an additional condition of probation for defendants eligible under the statute. (Pen. Code, § 1210.1, subd. (a).) The new law also created the Substance Abuse Treatment Trust Fund, with an initial $60 million appropriated for the 2000–2001 fiscal year and $120 million appropriated for each of the following five years. (Health & Saf. Code, §§ 11999.4, 11999.5.)

In uncodified section 8 (Section 8), entitled Effective Date, the initiative stated: "Except as otherwise provided, the provisions of this act shall become effective July 1, 2001, and its provisions shall be applied prospectively." (Prop. 36, § 8, reprinted at 51 West's Ann. Pen. Code, *supra*, foll. § 1210, p. 221.)

## DISCUSSION

Defendant contends that because Proposition 36 is an ameliorative statute and his conviction is not yet final, he is entitled to the initiative's benefits

under our rule in *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948] (*Estrada*). ■ Under the *Estrada* rule, an amendatory statute lessening punishment is presumed to apply in all cases not yet reduced to final judgment as of the amendatory statute's effective date. (*Id.* at p. 744.) In the alternative, he contends that it would violate principles of equal protection to deny him the ameliorative benefits of the initiative. We reject both contentions.

## A

The parties agree that Proposition 36 ameliorates the punishment for those persons convicted of nonviolent drug possession offenses who are eligible for its programs and that defendant might be eligible for those programs if Proposition 36 applies here. Defendant argues that Proposition 36 should apply to him because his conviction was not yet final at the time Proposition 36 became effective. He relies on *Estrada, supra,* 63 Cal.2d at page 744, where we held that "[i]f the amendatory statute lessening punishment becomes effective prior to the date the judgment of conviction becomes final then, in our opinion, it, and not the old statute in effect when the prohibited act was committed, applies." The Attorney General, on the other hand, points out that *Estrada* does not apply "when there is a saving clause" (*id.* at p. 747) and finds such a saving clause in Section 8 of the initiative, which states, "Except as otherwise provided, the provisions of this act shall become effective July 1, 2001, and its provisions shall be applied prospectively."

Whether Proposition 36 applies here requires us to "ascertain the legislative intent—did the [voters] intend the old or new statute to apply?" (*Estrada, supra,* 63 Cal.2d at p. 744; *People v. Nasalga* (1996) 12 Cal.4th 784, 791 [50 Cal.Rptr.2d 88, 910 P.2d 1380] (*Nasalga*) (plur. opn. of Werdegar, J.); *id.* 12 Cal.4th at p. 799 (conc. opn. of Kennard, J.).) Since the voters legally and constitutionally could have chosen either one (*Estrada, supra,* 63 Cal.2d at p. 744), we must decide which one was *intended.*

■ We begin with section 3 of the Penal Code. That section embodies the general rule of statutory construction that "when there is nothing to indicate a contrary intent in a statute it will be presumed that the Legislature intended the statute to operate prospectively and not retroactively." (*Estrada, supra,* 63 Cal.2d at p. 746.) We found a contrary intent in *Estrada* where a criminal statute had been amended to lessen the punishment after the prohibited act was committed but before final judgment had been entered in the case. Although the Legislature did not expressly state whether the old or new statute should apply in that circumstance, we found one consideration of "paramount importance" (*id.* at p. 744): " 'A legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser

penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law.' " (*Id.* at p. 745.) From this, "[i]t is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting defendant of the act is not final." (*Ibid.*) Thus, "[i]*f there is no saving clause* . . . the rule of construction that statutes are normally to be interpreted to operate prospectively and not retroactively (a rule embodied in section 3 of the Penal Code) has been rebutted." (*Id.* at p. 747, italics added.)

█   The problem for defendant is that Section 8 of Proposition 36 *does* include a saving clause, which states that the act "shall be applied prospectively." We need not range far to discover what "prospectively" means, since we have used the term ourselves with regularity. (See *People v. Weidert* (1985) 39 Cal.3d 836, 845–846 [218 Cal.Rptr. 57, 705 P.2d 380].) We used the term in *Estrada* to refer to the general rule of construction, embodied in Penal Code section 3, that an amended statute should not be applied retroactively to cases not yet reduced to final judgment. (*Estrada, supra,* 63 Cal.2d at pp. 746–747.) We used the term in *Nasalga* for the same purpose: "The rule in *Estrada,* of course, is not implicated where the Legislature clearly signals its intent to make the amendment *prospective,* by the inclusion of an express saving clause or its equivalent." (*Nasalga, supra,* 12 Cal.4th at p. 793 (plur. opn. of Werdegar, J.), italics added.)   █   We therefore conclude that this language, at least when read in isolation, reveals an intent to avoid the *Estrada* rule. (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1049 [36 Cal.Rptr.2d 74, 884 P.2d 1022] ["what *is* required is that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it"]; see *Nasalga, supra,* 12 Cal.4th at p. 793 (plur. opn. of Werdegar, J.).)

As defendant points out, however, the two main clauses in Section 8 cannot be read in isolation but are preceded by an introductory clause: "Except as otherwise provided . . . ." Defendant reasons that the phrased exception necessarily refers to the *Estrada* rule and concludes that Proposition 36 does apply prospectively *except* to the extent that *Estrada* provides for retroactive application. We do not agree with defendant's strained interpretation of Section 8. First, it is not entirely clear the introductory clause even modifies Section 8's second main clause—"its provisions shall be applied prospectively"—rather than just the first main clause—"the provisions of this act shall become effective July 1, 2001." (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1114 [81 Cal.Rptr.2d 471, 969 P.2d 564] [applying the "last antecedent rule"].)

After all, the provisions of the act did become effective July 1, 2001, *except as otherwise provided* in new Health and Safety Code section 11999.5, which stated that $60 million shall be appropriated from the General Fund to the Substance Abuse Treatment Trust Fund "[u]pon passage of this act." (See *In re Scoggins* (2001) 94 Cal.App.4th 650, 656 [114 Cal.Rptr.2d 508].) Second, even if the introductory clause were to extend to the second main clause, the contemplated exceptions to prospectivity appear to be the relatively narrow ones provided elsewhere in the act. As defendant concedes, this exception encompasses those on probation or parole from convictions that well predate July 1, 2001—i.e., those who were on probation for nonviolent drug possession offenses or on parole (but not for a serious or violent felony) on the effective date of the act and who were subsequently found to have violated probation or parole by committing a nonviolent drug possession offense or by violating a drug-related condition of probation or parole. (Pen. Code, §§ 1210.1, subd. (e)(3)(D)–(F) [probation], 3063.1, subd. (d)(3)(C), (D) [parole].) ■ That Proposition 36 applies to *these* individuals whose convictions predate the initiative's effective date, however, is not proof that it applies to *all* persons whose convictions predate the effective date. Third, defendant's proffered interpretation gives no effect to the statement that the act's provisions shall be applied prospectively. According to defendant, Section 8 "merely defines a nonexclusive class of defendants [who] are eligible for its provisions." If we were to agree with defendant, however, the statement that the act's provisions "shall be applied prospectively" would be drained of meaning, since the voters could have accomplished the same result by omitting the clause entirely. That is, in the absence of the saving clause, we would have applied the *Estrada* rule and extended the benefits of Proposition 36 to all those whose convictions were not yet final as well as to those whose convictions postdated the act's effective date. We cannot embrace an interpretation that makes Section 8 mere surplusage. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 249 [127 Cal.Rptr.2d 177, 57 P.3d 654].)

Defendant's alternate contention, that he is "convicted" within the meaning of Penal Code section 1210.1, subdivision (b)(1), only when his conviction becomes final, is merely a repackaging of the preceding argument. Were we to construe section 1210.1 to apply to all those whose convictions are not yet final, we would again be unable to accord any meaning to the provision in Section 8 that the act shall be applied prospectively. To address that lacuna, defendant suggests that the term "prospectively" was meant "to affirm that [the act's] provisions would not be applied to those whose convictions had become final since the law routinely excludes those whose convictions are final from the effects of new legislation." However, if it is the " 'universal common-law rule' " (*People v. Rossi* (1976) 18 Cal.3d 295, 304 [134 Cal.Rptr. 64, 555 P.2d 1313]) and perhaps a constitutional limitation

(see *Estrada*, 63 Cal.2d at p. 745) that ameliorative statutes not be applied to judgments that are already final, it is unlikely the voters would have perceived a need to reiterate this widespread and long-standing rule in a separate, uncodified section. We conclude instead that the initiative means what it says, i.e., that except as otherwise provided, the act shall be applied prospectively.

■ We find further support for our plain-language construction in the fact that the Substance Abuse and Crime Prevention Act of 2000 initiative, which was adopted by the voters on November 7, 2000, and would ordinarily have taken effect the next day (Cal. Const., art. II, § 10, subd. (a)), did not take effect until July 1, 2001. "Postponement of the effective date for an act indicates that it should have only prospective application." (2 Singer, Statutes and Statutory Construction (6th ed. 2001) § 41:4, p. 410; accord, *Time Warner Cable v. Doyle* (7th Cir. 1994) 66 F.3d 867, 879–880, fn. 16 ["postponement of the effective date of a regulation evinces an intent that it be prospective"]; *U. S. v. Brebner* (9th Cir. 1991) 951 F.2d 1017, 1022 [six-month delay in the effective date of a statute lessening punishment indicates that it has no retroactive effect]; *Wright v. Director, FEMA* (11th Cir. 1990) 913 F.2d 1566, 1572, fn. 13 [same]; *Dion v. Secretary of Health and Human Services* (1st Cir. 1987) 823 F.2d 669, 672 ["the thirteen-month postponement by Congress of the effective date of the statute shows a clear intent to obviate any retrospective application"]; *Eastwind, Inc. v. State* (Alaska 1997) 951 P.2d 844, 847 [delayed effective date "provides further support for the proposition that the 1993 amendments were intended to have prospective application only"]; *People v. Ramsey* (Ill. 2000) 192 Ill.2d 154 [735 N.E.2d 533, 548, 248 Ill.Dec. 882] ["Courts have held that the legislature's postponement of an effective date is direct evidence that a retroactive application was not intended"]; Deutsch v. M.P. Catherwood (N.Y. 1973) 31 N.Y.2d 487 [341 N.Y.S.2d 600, 602, 294 N.E.2d 193] ["If the amendments were to have retroactive effect, there would have been no need for any postponement"]; cf. *Preston v. State Bd. of Equalization* (2001) 25 Cal.4th 197, 223 [105 Cal.Rptr.2d 407, 19 P.3d 1148] [discussing the postponement of the statute's *operative* date].) The inference seems inescapable that the voters wanted to ensure an orderly transition by an immediate appropriation of $60 million to the Substance Abuse Treatment Trust Fund to expand existing treatment programs and create new ones *before* their caseloads increased—a sequence that depended on prospective application of the act.

Our construction is also supported by the ballot argument distributed to voters for the November 2000 General Election. Proponents of the measure explained that "[i]f Proposition 36 passes, nonviolent drug offenders convicted for the first or second time *after* 7/1/2001, will get mandatory,

court-supervised, treatment instead of jail." (Ballot Pamp., Gen. Elec. (Nov. 7, 2000) argument in favor of Prop. 36, p. 26, italics added.)

Finally, we do not agree that the rule of lenity requires us to construe Proposition 36 to apply retroactively to defendant. The rule of lenity applies " 'only if the court can do no more than guess what the legislative body intended.' " (*People v. Avery* (2002) 27 Cal.4th 49, 58 [115 Cal.Rptr.2d 403, 38 P.3d 1].) That situation arises when " 'two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable.' " (*Ibid.*) For the reasons stated above, we do not believe defendant's interpretation is reasonable. Hence, the rule of lenity cannot compel a different result.

## B

Defendant argues, in the alternative, that denying him the benefits of Proposition 36 violates his right to equal protection under the state and federal Constitutions. By creating two classes of nonviolent drug offenders— those convicted before July 1, 2001, whose judgments are not yet final, and those convicted after July 1, 2001—Section 8, he claims, treats two similarly situated groups in an unequal manner. In defendant's view, no compelling state interest justifies the disparity in treatment.

Defendant has not cited a single case, in this state or any other, that recognizes an equal protection violation arising from the timing of the effective date of a statute lessening the punishment for a particular offense. Numerous courts, however, have rejected such a claim—including this court. (*Baker v. Superior Court* (1984) 35 Cal.3d 663, 668 [200 Cal.Rptr. 293, 677 P.2d 219] [" 'A refusal to apply a statute retroactively does not violate the Fourteenth Amendment' "], quoting *People v. Aranda* (1965) 63 Cal.2d 518, 532 [47 Cal.Rptr. 353, 407 P.2d 265].) "The Legislature properly may specify that such statutes are prospective only, to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written." (*In re Kapperman* (1974) 11 Cal.3d 542, 546 [114 Cal.Rptr. 97, 522 P.2d 657] (*Kapperman*); see also *People v. Willis* (1978) 84 Cal.App.3d 952, 956 [149 Cal.Rptr. 301] [acknowledging that "all effective dates of statutes are somewhat arbitrary," but rejecting equal protection claim]; *People v. Superior Court* (*Gonzales*) (1978) 78 Cal.App.3d 134, 142 [144 Cal.Rptr. 89] [same].) The voters have the same prerogative. (See *Rossi v. Brown* (1995) 9 Cal.4th 688, 696, fn. 2 [38 Cal.Rptr.2d 363, 889 P.2d 557].)

■ Moreover, *Estrada* itself recognized that when the Legislature has amended a statute to lessen the punishment, its determination as to which

statute should apply to all convictions not yet final, *"either way,* would have been legal and constitutional." (*Estrada, supra,* 63 Cal.2d at p. 744, italics added; *In re Bender* (1983) 149 Cal.App.3d 380, 388 [196 Cal.Rptr. 801] ["'punishment-lessening statutes given prospective application do not violate equal protection"]; *People v. Henderson* (1980) 107 Cal.App.3d 475, 488, fn. 5 [166 Cal.Rptr. 20] ["Retroactive application of a punishment-mitigating statute is not a question of constitutional right but of legislative intent"]; *Talley v. Municipal Court* (1978) 87 Cal.App.3d 109, 114 [150 Cal.Rptr. 743] ["The short answer is *Estrada,* . . . which stated lucidly that the Legislature is not compelled to give sentencing changes retroactive effect"].) That the Legislature's choice, either way, would be constitutional is the foundation for our oft-repeated statement that, in this type of circumstance, the problem "is one of trying to ascertain the legislative intent—did the Legislature intend the old or new statute to apply?" (*Estrada, supra,* 63 Cal.2d at p. 744; *Nasalga, supra,* 12 Cal.4th at p. 791 (plur. opn. of Werdegar, J.), quoting *Estrada; In re Pedro T., supra,* 8 Cal.4th at p. 1045 [same]; *People v. Francis* (1969) 71 Cal.2d 66, 76 [75 Cal.Rptr. 199, 450 P.2d 591] [same].) Defendant's equal protection argument presumes that the *Estrada* rule is constitutionally compelled. As we have stated repeatedly, it is not.

Other jurisdictions are in accord. "[A] reduction of sentences only prospectively from the date a new sentencing statute takes effect is not a denial of equal protection." (16B C.J.S. (1985) Constitutional Law, § 777, pp. 666–667; *Meeks v. Jago* (6th Cir. 1976) 548 F.2d 134, 138 [no denial of equal protection occurred "as long as sentence was imposed according to the statute applicable at the time of sentence"]; see *Comerford v. Commonwealth of Massachusetts* (1st Cir. 1956) 233 F.2d 294, 295 ["The same situation might arise when a legislature prospectively reduced the maximum penalty for a crime, for then a prisoner sentenced to the maximum penalty before the effective date of the act would serve a longer imprisonment than one sentenced to the maximum term thereafter. Yet we are not aware of any violation of the constitutional rights of either group of prisoners in that situation"].) The Illinois Supreme Court, for example, rejected an analogous claim when the state approved a new comprehensive sentencing act that took effect after defendant was sentenced but " 'his case ha[d] not been finally adjudicated on appeal.' " (*People v. Grant* (Ill. 1978) 71 Ill.2d 551 [377 N.E.2d 4, 9, 17 Ill.Dec. 814], italics omitted.) Grant, like defendant here, argued "that there is no rational basis for distinguishing between persons sentenced after the effective date of the act and those, sentenced prior to that date, whose appeals are still pending." (*Ibid.*) The Illinois Supreme Court replied, as we did in *Estrada,* that "the ability to elect to be sentenced under a law enacted after the date of the commission of a crime is not a constitutional right but a benefit conferred solely by statute. It is not unconstitutional for the legislature to confer such benefit only prospectively,

neither is it unconstitutional for the legislature to specify 'a classification between groups differently situated, so long as a reasonable basis for the distinction exists.' [Citation.] In this instance, the legislature distinguished between those defendants, on the one hand, who had not yet been accorded any sentencing hearings prior to the cut-off date, and those, on the other hand, whose sentences, already imposed, would require remandments for additional sentencing hearings. We find this to be a reasonable basis for distinction and, therefore, no constitutional denial of equal protection." (*Ibid.*; accord, *State v. Ferrell* (1980) 126 Ariz. 1 [612 P.2d 52, 53]; *Fleming v. Zant* (1989) 259 Ga. 687 [386 S.E.2d 339, 341] [the amendment "distinguishes between cases that have been tried and those that have not. This classification is neither arbitrary nor discriminatory. The legislature had to choose some effective date"]; *Carter v. State* (Ind. 1987) 512 N.E.2d 158, 170 ["Because Carter was charged, tried, and sentenced before the amendment went into effect, it was not a denial of equal protection to sentence Carter according to the statute in effect at that time"]; *State ex rel. v. Ohio Adult Parole Auth.* (1997) 78 OhioSt.3d 186 [1997 Ohio 223, 677 N.E.2d 347, 349]; *Burch v. Tennessee Dept. of Correction* (Tenn.Ct.App. 1999) 994 S.W.2d 137, 139; *Delgado v. State* (Tex.App. 1995) 908 S.W.2d 317, 319; *Abdo v. Commonwealth* (1977) 218 Va. 473 [237 S.E.2d 900, 903–904] ["The fact that the legislature reduces the penalty for a crime after a prisoner is sentenced, and he does not benefit from that mitigation of punishment, does not constitute an arbitrary classification or deny the prisoner equal protection of the law"].)

As stated above, defendant has not cited a single case to the contrary. The closest he can come is *Kapperman, supra,* 11 Cal.3d 542, in which we reviewed the constitutionality of a newly enacted provision concerning presentence custody credit that applied only to those persons delivered to the custody of the Director of Corrections *after* the effective date of the section. Kapperman, who was delivered to the director's custody before that date, argued successfully that this limitation violated his right to equal protection. Before we addressed his claim, however, we made an "[i]nitial" observation: "we point out that this case is not governed by cases (e.g., *In re Estrada,* 63 Cal.2d 740, 744 [48 Cal.Rptr. 172, 408 P.2d 948] []) involving the application to previously convicted offenders of statutes lessening the *punishment* for a particular offense. The Legislature properly may specify that such statutes are prospective only, to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written. [Citation.] The People herein do not contend that retroactive application of section 2900.5 would interfere with the foregoing public purpose." (*Kapperman, supra,* 11 Cal.3d at p. 546.) ▀ This case, by contrast, does involve a statute lessening punishment for particular offenses, and retroactive effect of the statute would interfere with the foregoing public purpose.

We also find support from the State of Washington, which, like California, has enacted a treatment-oriented program as an alternative to mere confinement, entitled the Drug Offender Sentencing Alternative. (*State v. Kane* (2000) 101 Wn.App. 607 [5 P.3d 741, 742].) At the time Kane pleaded guilty to his drug offense, he was ineligible for the alternative sentence because of his prior felony convictions. The Washington Legislature then amended the eligibility requirements prior to the sentencing hearing, but the appellate court, in accordance with the Washington saving statute, determined that the amendment did not apply to Kane. (*Ibid.*) In rejecting Kane's claim of an equal protection violation, the court observed that a contrary rule would encourage sentencing delays and other manipulations " 'with unfair results overall . . . . [W]e see nothing irrational in a legislative conclusion that individuals should be punished in accordance with the sanctions in effect at the time the offense was committed, a viewpoint encompassed by the savings statutes themselves.' " (*Id.* at p. 746; accord, *In re Pedro T., supra*, 8 Cal.4th at p. 1047 [retroactive application "would provide a motive for delay and manipulation in criminal proceedings"].) Moreover, "an amendatory statute that substitutes treatment for time spent in prison may well require fiscal or administrative adjustments. The Legislature may have decided that such changes should be phased in gradually as new cases arise." (*Kane, supra*, 5 P.3d at p. 746; *In re DeLong* (2001) 93 Cal.App.4th 562, 569 [113 Cal.Rptr.2d 385] ["Obviously, the implementation of Proposition 36 would require that treatment programs be in place by the time defendants were sentenced"]; see generally *Baker v. Superior Court, supra*, 35 Cal.3d at p. 669 ["Nothing in these cases suggests, however, that the equal protection clause prohibits the Legislature from creating or abolishing a treatment program prospectively"].)

These concerns apply equally to the alternative drug offender sentencing scheme created by Proposition 36. *Kapperman*, like *Kane*, recognized as legitimate the legislative interest "that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written." (*Kapperman, supra*, 11 Cal.3d at p. 546.) *Kapperman*, like *Kane*, also recognized as legitimate the practical concerns associated with the transition from one sentencing scheme to another, such as resentencings. (*Id.* at p. 549, fn. 8.) Resentencing numerous defendants was plainly a result the voters sought to avoid by according the statute prospective effect. In addition, the voters may not have wanted to encourage defendants to file meritless appeals designed simply to stretch out the time to finality. "[T]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time." (*Sperry & Hutchinson Co. v. Rhodes* (1911) 220 U.S. 502, 505 [55 L.Ed. 561, 31 S.Ct. 490].) Therefore, defendant's equal protection claim must fail.

## DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

**BROWN, J.,** Dissenting.—For the reasons explained below, I disagree with the majority's conclusion that the rule of lenity does not apply in this case. (Maj. opn., *ante*, at p. 188.) In my view, when considered in its entirety, Proposition 36 may reasonably be construed to extend to defendants whose conviction for a nonviolent drug offense was not final as of July 1, 2001. In reaching a contrary conclusion, the majority takes an unnecessarily narrow assessment of the electorate's intent and in doing so fails to fully effectuate the express purpose of the initiative. I respectfully dissent.

The question here is whether defendant may invoke the principle of *In re Estrada* (1965) 63 Cal.2d 740, 745–748 [48 Cal.Rptr. 172, 408 P.2d 948], providing that, in the absence of a saving clause, ameliorative legislation applies retroactively to all convictions not yet final as of the effective date. The majority identifies the requisite saving clause as section 8, which states that "[e]xcept as otherwise provided, the provisions of this act shall become effective July 1, 2001, and its provisions shall be applied prospectively." (Prop. 36, § 8,[1] as approved by the voters, Gen. Elec. (Nov. 7, 2000) (Proposition 36), reprinted at 51 West's Ann. Pen. Code (2003 supp.) foll. § 1210, p. 221.) Yet, the meaning of this section is hardly self-explanatory. Since prospective application is not qualified in relation to the date of offense or finality of conviction, it lacks the specificity generally required of an effective saving clause. (See, e.g., *People v. Holland* (1983) 141 Cal.App.3d 795, 797 [190 Cal.Rptr. 552] [legislation specified ameliorative provisions "shall apply only to offenses committed on or after" particular date (italics omitted)]; *People v. Superior Court (Martin)* (1982) 132 Cal.App.3d 658, 663 [183 Cal.Rptr. 563] [statute specified " 'provisions of the bill shall not be construed to affect any person under commitment prior to the effective date of the bill' "]; *Talley v. Municipal Court* (1978) 87 Cal.App.3d 109, 114 [150 Cal.Rptr. 743] [statute contained express provision that it applied only to offenses committed after a date certain]; Pen. Code, § 1203.4, subd. (a) ["This subdivision shall apply to all applications . . . filed on or after November 23, 1970"]; see generally *In re Estrada*, at p. 747.) Accordingly, the scope of section 8 becomes a matter of discerning the electorate's intent, which can only be done by considering the larger context of Proposition 36.

---

[1] Hereafter, unless otherwise indicated references to section 8 are to the uncodified version in Proposition 36.

The "Purpose and Intent" of Proposition 36 is set forth in section 3 of the initiative: "The People of the State of California hereby declare their purpose and intent in enacting this act to be as follows:

"(a) To divert from incarceration into community-based substance abuse treatment programs nonviolent defendants, probationers and parolees charged with simple drug possession or drug use offenses;

"(b) To halt the wasteful expenditure of hundreds of millions of dollars each year on the incarceration—and reincarceration—of nonviolent drug users who would be better served by community-based treatment; and

"(c) To enhance public safety by reducing drug-related crime and preserving jails and prison cells for serious and violent offenders, and to improve public health by reducing drug abuse and drug dependence through proven and effective drug treatment strategies." (Prop. 36, § 3, reprinted at 51 West's Ann. Pen. Code, *supra*, foll. § 1210, p. 221.)

Plainly, each of these goals is best served by maximizing the number of eligible defendants. Other provisions of Proposition 36 also support an expansive application. For example, if a defendant on probation for a nonviolent drug possession offense as of July 1, 2001—that is, a probationer whose conviction is already final as of the effective date—violates probation, he or she may still be accorded the benefits of the initiative. (Pen. Code, § 1210.1, subd. (e)(3)(D).) Even a second violation of probation will not render a defendant ineligible. (*Id.*, subd. (e)(3)(E); see *id.*, § 3063.1 [parolee eligibility]; see also Health & Saf. Code, §§ 11999.5, 11999.6 [Prop. 36 funding cannot be used "to supplant funds from any existing fund source or mechanism currently used to provide substance abuse treatment"].) As the Court of Appeal in *In re DeLong* (2001) 93 Cal.App.4th 562, 569 [113 Cal.Rptr.2d 385], observed, "In view of Proposition 36's provisions extending it to defendants who were already on probation or on parole at the time the initiative took effect, no rationale appears to exclude from its wide reach the limited class of defendants who, as of the effective date, had been adjudged guilty and were awaiting sentencing." Given the legislative intent to remove certain nonviolent drug offenders from the criminal justice system not only for their own benefit but for the benefit of society as a whole through the reduction in incarceration costs and drug-related criminal activity, similar reasoning should apply to defendants awaiting finality of their convictions as of the effective date.

The fact that section 8 delayed the effective date of Proposition 36 almost eight months from the time of enactment does not undermine the conclusion the voters intended broad application. The sole reason for the postponement

was practical: time was necessary to enable a sufficient number of treatment facilities to be licensed or certified. (See *In re DeLong, supra*, 93 Cal.App.4th at pp. 569–570.) "Thus, the voters delayed the effective date to July 1, 2001, so that treatment facilities could be in place, not out of a desire to preserve the stricter sentencing scheme for nonviolent drug offenders for a few more months" (*id.* at p. 570) or to limit unnecessarily the number of defendants eligible once the programs became operational. A defendant whose conviction was not final as of July 1, 2001, was still "in the system" and inclusion would not compromise the need for time to get treatment facilities functioning by that date. (Cf. *In re Pedro T.* (1994) 8 Cal.4th 1041, 1046 [36 Cal.Rptr.2d 74, 884 P.2d 1022] [consideration of practical effect supports prospective application].)

Nor does this construction render section 8 surplusage. Given the reason for the delayed effective date, the voters could reasonably have wanted to exclude defendants whose convictions became final between November 7, 2000 and July 1, 2001. Under the rule of *In re Estrada, supra*, 63 Cal.2d 740, these defendants might make a claim to the initiative's amelioration. Without facilities fully operational, however, the difficulty of working them into the program could have been seen as outweighing any benefit. Therefore, as to this class of defendants the electorate designated the provisions prospective while preserving—again, under the rule of *Estrada*—the benefits for defendants whose conviction was not yet final as of July 1, 2001.

Nothing in the ballot arguments negates such a conclusion. The majority cites a statement by the proponents of Proposition 36 that " '[i]f Proposition 36 passes, nonviolent drug offenders convicted for the first or second time *after* 7/1/2001, will get mandatory, court-supervised treatment instead of jail.' [Citation.]" (Maj. opn., *ante*, at p. 187–188.) This single reference to the effective date is ambiguous at best, as is the Legislative Analyst's notation that the provisions of Proposition 36 are "effective July 1, 2001." (Ballot Pamp., Gen. Elec. (Nov. 7, 2000) analysis of Prop. 36 by the Legis. Analyst, p. 23.) The effective date had no particular significance to the arguments for or against or in the Legislative Analyst's explanation of the initiative's salient changes in the law and fiscal impact. ather, the emphasis throughout the ballot materials was on removing nonviolent drug offenders from the criminal justice system both to assist them in becoming drug free and, of equal importance, to save taxpayers millions of dollars otherwise required to incarcerate them. Moreover, "the term 'conviction' [or 'convicted'] has no fixed definition and has been interpreted by the courts of this state to have various meanings, depending upon the context in which the word is used." (*People v. Rhoads*

(1990) 221 Cal.App.3d 56, 60 [270 Cal.Rptr. 266]; see *Boyll v. State Personnel Board* (1983) 146 Cal.App.3d 1070, 1073–1074 [194 Cal.Rptr. 717].) In at least one context, decisions of this court have held a defendant has not been finally convicted if an appeal is pending. (*In re Riccardi* (1920) 182 Cal. 675, 681 [189 P. 694]; *People v. Treadwell* (1885) 66 Cal. 400, 401 [5 P. 686].)

The majority's insistence on adopting a narrow focus to determine the electorate's intent has rendered section 8 the "straightjacket" the court in *Estrada* warned against (*In re Estrada, supra,* 63 Cal.2d at p. 746)—as this case precisely illustrates. Defendant was convicted of violating Health and Safety Code section 11350, subdivision (a), for possessing one-quarter gram of cocaine. Because he had several prior convictions for serious or violent felonies, he was sentenced to 25 years to life in prison. (See Pen. Code, §§ 667, subd. (e)(2)(A)(ii), 1170.12, subd. (c)(2)(A)(ii).) The ballot argument in favor of Proposition 36 explained that a year of drug treatment costs about $4,000 for each participant, while the yearly cost for a state prisoner is $24,000. (Ballot Pamp., Gen. Elec. (Nov. 7, 2000) argument in favor of Prop. 36, p. 26.) Even one year's incarceration of defendant will far exceed the amount taxpayers would pay to divert him from the criminal justice system altogether. Since he will not be eligible for parole for many years, the actual cost will likely be "the wasteful expenditure" of hundreds of thousands of dollars for an individual "who would be better served by community-based treatment." (Prop. 36, § 3, subd. (b), reprinted at 51 West's Ann. Pen. Code, *supra,* foll. § 1210, p. 221.) Nor is this an isolated situation. The facts of *People v. Fryman*[*] (Cal.App.), are virtually identical.

As the foregoing demonstrates, there are two reasonable interpretations of Proposition 36 with respect to whether defendant comes within its ameliorative provisions. Under the rule of lenity, he is entitled to the benefit of the doubt as to which should prevail. (*Ex parte Rosenheim* (1890) 83 Cal. 388,

---

[*] Reporter's Note; Review granted on July 31, 2002, S107283. On September 10, 2003, the cause was transferred to Court of Appeal, Sixth Appellate District, with directions to vacate and reconsider in light of this opinion.

391 [23 P. 372].) This result is all the more compelling since the majority's construction frustrates rather than promotes the purpose and intent of the initiative. (Cf. *In re Pedro T.*, *supra*, 8 Cal.4th at p. 1046 [retroactive application would conflict with express legislative intent].)

I dissent.