Filed 10/22/20

# FOR PUBLICATION IN THE OFFICIAL REPORTS

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B299939 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA130084) |
| v. | |
| JESUS LIZARRAGA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kelvin D. Filer, Judge. Affirmed.

Julie Caleca, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and Nancy Lii Ladner, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Jesus Lizarraga was 17 years old when he shot a rival gang member; he was tried and sentenced as an adult. We affirmed his initial appeal. (*People v. Lizarraga* (Dec. 7, 2015, B258261) [nonpub. opn.].) After the first appeal was final, defendant filed a petition for writ of habeas corpus under *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) and requested an opportunity to make a record relevant to his eventual youth offender parole hearing. The trial court granted the petition and set a date for an evidentiary hearing. Lizarraga next proceeded to file a motion in the trial court for a transfer hearing in juvenile court pursuant to the newly-enacted Public Safety and Rehabilitation Act of 2016 (Proposition 57). The trial court denied the motion, finding Lizarraga's case was final and Proposition 57 was not retroactive.

On this second appeal, we conclude that Lizarraga's case was final when he requested the transfer hearing, and Proposition 57 does not apply to final judgments. We also find that Lizarraga's equal protection challenge is without merit. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2014, a jury convicted Lizarraga of second degree murder and found that he personally used a firearm in connection with the shooting of a rival gang member. The trial court sentenced him to 40 years to life in state prison. We affirmed the judgment as modified.[1] The California Supreme Court denied review, and we issued the remittitur on March 9,

---

[1] We modified the judgment to impose and stay two lesser firearm enhancements.

2016. On March 29, 2016, the trial court modified the judgment in keeping with the remittitur and terminated proceedings.

Eight months later, on November 8, 2016, California voters passed Proposition 57, prohibiting prosecutors from charging juveniles with crimes directly in adult criminal court. Approximately a year and a half after that, in July 2018, Lizarraga filed a petition for writ of habeas corpus seeking a *Franklin* hearing which the trial court granted.[2]

Prior to the scheduled hearing, Lizarraga filed a "Notice of Motion and Motion to Remand Case to Juvenile Court in light of Proposition 57. Proposition 57, "The Public Safety and Rehabilitation Act of 2016," among other things, repealed the statutory provision permitting the direct filing of juvenile cases in adult criminal court. Under Proposition 57, once the case is in juvenile court, "if the prosecution wishes to try the juvenile as an adult, the juvenile court must conduct what we will call a 'transfer hearing' to determine whether the matter should remain in juvenile court or be transferred to adult court." (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 303 (*Lara*).)

The People opposed the motion to transfer, arguing that Lizarraga's case was already final when Proposition 57 took effect, and he was not entitled to a transfer hearing under *Lara*.

---

[2] In *Franklin*, the court held that a juvenile offender must be given the opportunity at a hearing to present evidence regarding the juvenile's personal characteristics and circumstances at the time of the offense. This evidence becomes part of the record and may be considered at a future youth offender parole hearing. (*Franklin*, *supra*, 63 Cal.4th at p. 283.) As far as we can tell from the record, the *Franklin* hearing went forward as scheduled. On appeal, defendant does not assign error to the *Franklin* hearing itself.

The trial court denied the motion, because it found that "the *Franklin* hearing is not a resentencing," and "this particular case has been final for quite some time." Lizarraga timely appealed.

### DISCUSSION

Lizarraga makes three arguments on appeal: (1) he was entitled to a transfer hearing under Proposition 57 because his case was not final, (2) even if his case was final, Proposition 57 still applies; and (3) the denial of a Proposition 57 transfer hearing to youth offenders with final sentences is a violation of equal protection clauses of the state and federal constitutions.

### 1.        *Proposition 57*

" 'Historically, a child could be tried in criminal court only after a judicial determination, before jeopardy attached, that he or she was unfit to be dealt with under juvenile court law.' " (*Lara, supra,* 4 Cal.5th at p. 305.) "Amendments to former sections 602 and 707 in 1999 and 2000, some by initiative, changed this historical rule. Under the changes, in specified circumstances, prosecutors were permitted, and sometimes required, to file charges against a juvenile directly in criminal court, where the juvenile would be treated as an adult." (*Ibid.*)

Proposition 57 largely returned California to its historical rule. (*Lara*, *supra*, 4 Cal.5th at p. 305.) "Proposition 57 amended the Welfare and Institutions Code so as to eliminate direct filing by prosecutors. Certain categories of minors . . . can still be tried in criminal court, but only after a juvenile court judge conducts a transfer hearing to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated." (*Id.* at pp. 305–306.)

4

In 2018, our Supreme Court decided *Lara,* which held that Proposition 57 "applies to all juveniles charged directly in adult court whose judgment was not final at the time it was enacted." (*Lara*, *supra*, 4 Cal.5th at p. 304.) As to juveniles that had cases pending on appeal prior to the passage of Proposition 57, the defendant's conviction and sentence are to be conditionally reversed and the juvenile court is to conduct a transfer hearing. (*Id.* at p. 310.)

## 2. *Lizarraga's Judgment Was Final*

Lizarraga argues that his case was not final because the trial court granted his habeas petition and scheduled a *Franklin* hearing. As Proposition 57 applies retroactively to cases that are not yet final, he contends he is entitled to a transfer hearing.

Our response is threefold: First, the *Franklin* hearing aside, Lizarraga's case was final in June 2016, upon expiration of the time to seek review in the United States Supreme Court. A "judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed." (*People v. Vieira* (2005) 35 Cal.4th 264, 306; see also *In re Pine* (1977) 66 Cal.App.3d 593, 595, citing *In re Dabney* (1969) 71 Cal.2d 1, 11 [a "conviction only [becomes] final for retroactivity purposes . . . when the period during which [the defendant] might have applied for certiorari ended."]) The United States Supreme Court, rule 13 provides that a petition for writ of certiorari is timely filed within 90 days after entry of judgment of a state court of last resort. The record does not show that Lizarraga filed a petition for writ of certiorari. His judgment was thus final on June 7, 2016—90 days after the California Supreme Court denied review. Lizarraga nearly concedes as much.

5

Second, we find inapt Lizarraga's reliance on *People v. Hargis* (2019) 33 Cal.App.5th 199 (*Hargis*). *Hargis* held that a defendant was entitled to a transfer hearing after he appealed his conviction and his case was remanded for a *Franklin* hearing. Proposition 57 was enacted one week after the appellate opinion was filed affirming the judgment and remanding the matter. (*Id.* at p. 202.) The *Hargis* court found that the case was not yet final. In addressing the applicability of Proposition 57, the Court of Appeal concluded "it is indisputable that defendant, who was 16 years old at the time of the offenses of which he was convicted, is entitled to a juvenile fitness/transfer hearing pursuant to Proposition 57, as he was charged directly in adult court and his judgment was not final at the time the new law was enacted." (*Id.* at pp. 204–205.)

The present case is quite different. The *Hargis* court correctly observed that the case was not final. The Court of Appeal had remanded the matter for a *Franklin* hearing, i.e. further proceedings were to take place in the trial court in the very same case that had been appealed. Here, Lizarraga filed a petition for habeas corpus some four years after his direct appeal was final. He essentially argues that whenever a *Franklin* hearing is scheduled – even years after the case has become final – the finality is undone and all intervening changes in the law are in play. *Hargis* does not say that. To the extent *Hargis* could be read in such a manner, we respectfully disagree.

Third, we reject defendant's argument that the grant of a *Franklin* hearing essentially created a new sentencing hearing thus effectively vacating the earlier finality. We acknowledge that a grant of habeas corpus to resentence a defendant may change the finality date for purposes of retroactivity of later

6

passed ameliorative laws. Lizarraga relies on this principle when he cites to *People v. Garcia* (2018) 30 Cal.App.5th 316, where the defendant was ordered resentenced and then successfully applied for a transfer hearing. When a defendant is resentenced, there is no longer a final judgment of conviction because there is no existing sentence. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893 [where there is a full resentencing, the court may consider changes in the law providing for a reduced sentence].) Here, Lizarraga was not resentenced, instead, the court set only a limited hearing at which defendant was entitled to present evidence for use at a future parole hearing. Defendant was not exposed at the *Franklin* hearing to any increase in sentence—or any decrease for that matter.[3]

---

[3] In his reply brief, Lizarraga acknowledges that *Hargis* does not compel reversal: "Appellant fully acknowledges that the difference between *Hargis* and the instant case is that, in *Hargis*, the direct appeal was still pending when Proposition 57 took effect." The procedural posture of the case as described by the Court of Appeal was: "On defendant's first appeal, we affirmed the judgment in its entirety. The California Supreme Court granted review and remanded the case to us with directions to vacate our decision and to reconsider the cause in light of *People v. Franklin* (2016) 63 Cal.4th 261, 283–284 (*Franklin*). We again affirmed the judgment—expressly including the sentence—but remanded the matter to the trial court for a determination whether defendant was afforded sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing and, if not, to afford him that opportunity." (*Hargis, supra,* 33 Cal.App.5th at p. 202.) The focus of the court's opinion was whether the trial court was precluded from conducting a Proposition 57 hearing because it was not mentioned in the remittitur. There was no discussion that a

7

### 3. *Proposition 57 Does Not Apply to Final Judgments*

Lizarraga argues that even if his judgment is final, he is still entitled to a transfer hearing because Proposition 57 applies retroactively to all juvenile offenders. He contends that *Lara* did not consider this issue but only addressed the retroactivity of Proposition 57 in relation to cases that were not final. We do not read *Lara* so narrowly—the Supreme Court's opinion established that Proposition 57 is not fully retroactive.

In *Lara*, the Court applied an "inference of retroactivity" pursuant to *In re Estrada* (1963) 63 Cal.2d 740 (*Estrada*) and held that Proposition 57 applied to defendants whose judgments were not final. (*Lara, supra*, 4 Cal.5th at p. 309.) *Estrada* stands for the proposition that, "when the Legislature amends a statute for the purpose of lessening the punishment, in the absence of clear legislative intent to the contrary, a criminal defendant should be accorded the benefit of a mitigation of punishment adopted before his criminal conviction became final." (*In re Chavez* (2004) 114 Cal.App.4th 989, 999 (*Chavez*).) In arguing that we should extend Proposition 57's application to defendants whose judgments are final, Lizarraga relies on the following statement from *Chavez*: "There is nothing in *Estrada* that prohibits the application of revised sentencing provisions to persons whose sentences have become final if that is what the Legislature intended or what the Constitution requires." (*Id.* at p. 1000.) *Chavez* does not assist defendant. There, the appellate court concluded that the Legislature intended that a new statute reducing the sentence for filing false tax returns be applied to two

transfer hearing was proper because the *Franklin* hearing was the equivalent to resentencing. (*Id.* at pp. 207–208.)

current inmates whose cases were final. (*Id*. at pp. 991–992.) The court reviewed the amendment's extensive legislature history and held that the conclusion was "unavoidable" that the Legislature "intended the amendment to apply to persons sentenced under the anomalous statute." (*Id.* at p. 999.)

At most *Chavez* stands for the proposition that if the Legislature so intends, an amendment to a criminal statute may apply to those defendants whose cases are already final, and that *Estrada* does not mandate otherwise. *Chavez*, of course, has nothing to do with Proposition 57, and preceded *Lara* by 14 years. Our Supreme Court has now held that Proposition 57 applies to those whose convictions are not yet final. Even if the literal words do not necessarily foreclose a finding that the proposition applies to those defendants whose cases are final, the fair reading of the Supreme Court's holding is that it does not. Finally, if the Supreme Court left the issue open, *Chavez* teaches that before a court can apply a statute retroactively to final judgments, it must discern a legislative purpose to do so. Lizarraga points to nothing in the legislative history (the ballot pamphlet) that suggests the electorate intended to order new transfer hearings for every juvenile offender convicted in adult court since 1999 (when the transfer statutes were first changed).

### 4.    *There is No Equal Protection Violation*

Lizarraga argues that denying him Proposition 57 relief violates his right to equal protection under the state and federal constitutions. He contends that giving Proposition 57 only partial retroactive effect creates two classes of similarly situated youth offenders:  those whose sentences were not yet final on November 9, 2016 when Proposition 57 went into effect, and those whose sentences were final on that date. One group of

9

defendants will serve their sentences in state prison; the other group will have the opportunity to obtain rehabilitative services in the juvenile system. (See *People v. Vela* (2018) 21 Cal.App.5th 1099, 1105 ["There is no 'sentence,' per se, in juvenile court. Rather, a judge can impose a wide variety of rehabilitation alternatives . . . ."].) In Lizarraga's view, no compelling state interest or even a rational basis justifies this unequal treatment.

We reject this claim because our Supreme Court has held that no "equal protection violation aris[es] from the timing of the effective date of a statute lessening the punishment for a particular offense." (*People v. Floyd* (2003) 31 Cal.4th 179, 188 (*Floyd*).) *Floyd* considered the retroactivity of Proposition 36, which "amended state law to require that certain adult drug offenders receive probation, conditioned on participation in and completion of an appropriate drug treatment program, instead of receiving a prison term or probation without drug treatment." (*Id.* at p. 183.)

In *Floyd*, the defendant was sentenced shortly *after* Proposition 36 was passed into law, so his conviction was not yet final at the time of passage. (*Floyd, supra*, 31 Cal.4th at p. 183.) The defendant argued that the ameliorative law was retroactive to him because his conviction was not final. (*Id.* at pp. 183–184.) Alternatively, he argued that to deny application of Proposition 36 to him violated the equal protection of the laws. (*Id.* at p. 184.) The Supreme Court disagreed on both counts.

Unlike *Lara,* where the court would conclude that Proposition 57 applies to all judgments not yet final, the Supreme Court in *Floyd* did not go even that far; instead, it held that the proposition was prospective only. (*Floyd, supra*, 31 Cal.4th at p. 182.) For reasons that are not particularly germane to the

10

present appeal, the court concluded that the proposition itself stated the voters' intent to give only a prospective application to the law.[4] (*Ibid.*) Defendant's crime had been committed many years before the passage of Proposition 36.

In *Floyd,* the defendant's alternative argument was that to not apply the proposition to him when his judgment was not final at the time of passage would violate his equal protection rights. The Supreme Court was not persuaded. " 'The Legislature properly may specify that such statutes are prospective only, to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written.' [Citations.] The voters have the same prerogative. [Citation.]" (*Floyd, supra,* 31 Cal.4th at p. 188.)

Finally, the Court pointed out that the defendant in *Floyd* offered no authority for his equal protection argument. In an observation tellingly applicable to the present appeal, the court stated, "Defendant has not cited a single case, in this state or any other, that recognizes an equal protection violation arising from the timing of the effective date of a statute lessening the punishment for a particular offense. Numerous courts, however, have rejected such a claim—including this court." (*Floyd, supra*, 31 Cal.4th at p. 188.)

Lizarraga argues that *Floyd*'s holding is limited to statutes that apply prospectively, not those that are partially retroactive. That principal emerges nowhere in *Floyd*. We find incongruous

---

[4]    The Supreme Court relied on an uncodified portion of Proposition 36: "Except as otherwise provided, the provisions of this act shall become effective July 1, 2001, and its provisions shall be applied prospectively." (*Floyd, supra*, 31 Cal.4th at p. 182.)

11

the argument that prospective laws do not constitutionally discriminate against those defendants whose convictions are not final at the time of passage but do violate the rights of those defendants whose convictions have long been final.  More to the point, the Supreme Court has foreclosed that argument:  The "'14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time.'" (*Floyd*, *supra*, 31 Cal.4th at p. 191, citing.)  "Retroactive application of a punishment-mitigating statute is not a question of constitutional right but of legislative intent." (*People v. Henderson* (1980) 107 Cal.App.3d 475, 488, fn. 5.)  Lizarraga's equal protection rights were not violated.

### DISPOSITION

The order denying Lizarraga's motion to remand under Proposition 57 is affirmed.


RUBIN, P. J.

WE CONCUR:



BAKER, J.



MOOR, J.

12