Filed 11/8/13  P. v. Brinson CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054511 |
| v. | (Super.Ct.No. RIF150426) |
| HIRAM BRINSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Harry A. Staley (retired judge of the Kern Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) and Richard Todd Fields, Judges.  Affirmed.

Elisa A. Brandes, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel, Charles C. Ragland, Warren J. Williams and Marissa Ann Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Hiram Brinson guilty of (1) attempting to elude a pursuing peace officer (Veh. Code, § 2800.2, subd. (a)); (2) driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)); (3) obstructing a peace officer (Pen. Code, § 148, subd. (a)(1)); and (4) driving without a valid driver's license (Veh. Code, § 12500, subd. (a)).

The trial court found true the allegations that defendant (1) suffered two prior strike convictions (Pen. Code, §§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)),[1] and (2) two prior convictions for which he served prison terms (§ 667.5, subd. (b)).  The trial court sentenced defendant to prison for a determinate term of two years and an indeterminate term of 25 years to life.

Defendant raises three issues on appeal.  First, defendant asserts his 2004 convictions cannot be used as strikes and a prison prior in this case because his pleas in the prior case were involuntary.  Second, defendant contends equal protection requires retroactive application of section 4019.  Third, defendant asserts he is entitled to be automatically resentenced under the "Three Strikes Reform Act of 2012" (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012)) (the "Reform Act").  We affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

Defendant's crimes in the instant case were committed in May 2009.  The First Amended Information alleged defendant suffered two prison priors (§ 667.5, subd. (b))

---

[1] All subsequent statutory references will be to the Penal Code unless otherwise indicated.

and two prior strike convictions (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)). The first prison prior involved a conviction for child abuse or endangerment in 1996. The second prison prior and both strike convictions concerned convictions for first degree burglary (§ 459) in 2004.

In 2004, defendant completed a plea form, indicating that he would plead guilty to 12 different charges plus enhancements on the condition that he receive a prison term of seven years and accrue credits at a rate of 50 percent. At the plea hearing, defendant pled guilty to (1) five counts of first degree burglary (Pen. Code, § 459), (2) one count of inflicting corporal injury on a spouse (Pen. Code, § 273.5, subd. (a)), (3) two counts of taking a vehicle without the owner's consent (Veh. Code, § 10851, subd. (a)), (4) one count of trespassing and building fires (Pen. Code, § 602, subd. (i)), and (5) two counts of receiving stolen property (Pen. Code, § 496, subd. (a)).[2] Defendant also admitted suffering a prior conviction for which he served a prison term. (Pen. Code, § 667.5, subd. (b).)

At the 2004 hearing, defendant's trial attorney said, "I'd also like to make the record clear, it's in writing, but also that this is to be seven years to be served at half time, and that's the reason for the great detail in the various charges. And the low term counts on all the 459s." The court asked the prosecutor if she wanted to place anything on the record. The prosecutor responded, "Just that this is a plea to the Court." When

---

[2] Only 11 crimes are listed because the trial court did not ask for a guilty plea on Count 9. The court skipped from Count 8 to Count 10.

3

the trial court pronounced defendant's sentence it said the term would be a "total [of] seven years."

In October 2006 defendant wrote a letter to the trial court about his credit accrual. In the letter, defendant explained that he was given 963 days of credit for the 22 months he spent in the county jail. Defendant explained he had been given a release date of September 14, 2006, upon arriving at prison, but that date was later changed to March 7, 2007. Defendant asserted he had been free from discipline and was not earning credits at the agreed upon 50 percent rate.[3]

On March 22, 2007, a trial court clerk responded to defendant's letter. The letter informed defendant that a properly noticed motion would be required to modify defendant's sentence. The court clerk suggested defendant contact the attorney who handled defendant's case, the Riverside County Public Defender's Office, or the Riverside County Lawyer Referral Service. There is nothing in the record indicating defendant followed through with this recommendation.

In July 2010, as part of the instant case, defendant filed a motion to dismiss the strike allegations against him because his 2004 guilty plea was involuntary and illegal, in that he was falsely led to believe he would receive a sentence of seven years with 50 percent credit accrual. Defendant asserted his 2004 plea was "fraudulently induced." In response, the prosecutor argued defendant could not challenge the strike priors on the

---

[3] Due to defendant pleading guilty to first degree burglary, under section 2933.1, subdivision (a), defendant could only earn worktime credits at a rate of 15 percent (§ 667.5, subd. (c)(21)).

basis of a falsely induced plea.  Rather, defendant could only collaterally attack the prior conviction based upon a denial of counsel (*Gideon*[4] error) or failure to observe defendant's rights to a jury trial, silence, and confrontation (*Boykin/Tahl* rights[5]).

On August 11, 2010, the trial court held a hearing on defendant's motion.  The trial court found that in 2004 defendant was informed of his *Boykin-Tahl* rights, he understood the rights, and he knowingly waived them.  The trial court cited defendant's plea form and a transcript of defendant's plea hearing as evidence that defendant had a "clear understanding" of the rights he was waiving.  The trial court concluded credit accrual agreements were "not anything that's required under *Boykin Tahl*."  Further, the trial court concluded defendant did not have a plea agreement or plea bargain; rather, he entered an open plea to the court.  The trial court denied defendant's motion, reasoning that the motion was based on improper advisement of his *Boykin/Tahl* rights but the evidence reflected defendant was properly advised of his rights.

## DISCUSSION

A.     <u>GUILTY PLEA</u>

Defendant contends his 2004 convictions cannot be used as prior convictions for sentencing in the instant case because the pleas were unconstitutional in that they were induced by a promise that was legally impossible to fulfill.  We disagree.

---

[4]  *Gideon v. Wainwright* (1963) 372 U.S. 335.

[5]  *Boykin v. Alabama* (1969) 395 U.S. 238; *In re Tahl* (1969) 1 Cal.3d 122.

5

A trial court may not increase a defendant's prison term based upon a prior felony conviction that was obtained in violation of the defendant's constitutional rights. (*People v. Allen* (1999) 21 Cal.4th 424, 429.) A collateral attack on a prior conviction, brought via a motion to strike, may only be based on certain recognized theories: (1) denial of counsel (*Gideon* error), or (2) failure to secure a proper waiver of the defendant's rights to a jury trial, silence, and confrontation (*Boykin/Tahl*). (*Allen*, at pp. 433, 439-440.) Otherwise, the validity of a prior conviction may be litigated via a separate proceeding, such as habeas corpus. (*Id.* at p. 435; *People v. Villa* (2009) 45 Cal.4th 1063, 1074.)

We review rulings on motions to strike prior convictions for an abuse of discretion. (*People v. Williams* (1998) 17 Cal.4th 148, 162.) We review the constitutionality of guilty pleas under the de novo standard of review. (See *People v. Howard* (1992) 1 Cal.4th 1132, 1175 [setting forth the test for determining the constitutional validity of a plea].) Since we are reviewing a hybrid of these two rulings, we will take the cautious approach and apply the more stringent de novo standard of review.

Defendant's concerns about his 2004 guilty plea involve allegations that he was induced to enter the plea by a false promise of a 50 percent credit accrual. Defendant's concerns about the plea do not relate to a denial of counsel or his rights of silence, confrontation, and a jury. Since defendant's motion does not pertain to one of the recognized theories upon which a special motion to strike may be based, we conclude

6

the trial court did not err by denying defendant's motion. Defendant failed to show *Gideon* error or *Boykin/Tahl* error in his 2004 guilty plea.

Defendant asserts the trial court erred because the test for whether a plea is constitutionally valid requires consideration of the "totality of the circumstances" involved with the plea, and the trial court did not consider the allegedly false promise made to defendant when ruling on defendant's motion; defendant asserts the totality of the circumstances reflect his plea was involuntary. Defendant's argument is not persuasive because the "totality of the circumstances" analysis is relevant in a harmless error review, which we are not performing in this matter.

In *Howard,* our Supreme Court decided whether "error involving *Boykin/Tahl* admonitions [citations] is reversible per se, or regardless of prejudice." (*People v. Howard*, *supra*, 1 Cal.4th at pp. 1174-1175.) The court decided such an error should be reviewed by considering "the totality of the circumstances." (*Id.* at p. 1175.) So, for example, if a defendant were not properly advised of his right to remain silent, but his plea could be found to be knowing and voluntary under the totality of the circumstances, then the prior conviction would not necessarily need to be stricken. (*People v. Knight* (1992) 6 Cal.App.4th 1829, 1831-1832.) Given that we are not performing a harmless error analysis, we find defendant's reliance on the "totality of the circumstances" rule to be unpersuasive.

B.    SECTION 4019

Defendant contends the trial court erred in calculating his presentence conduct credits because the recent amendment to section 4019 should be retroactively applied to

7

his case.  Defendant relies on principles of equal protection to support his argument.  We disagree.

In the current version of section 4019, the Legislature expressly provided the statute is to only be applied prospectively.  Specifically, the current version of the statute applies to defendants who commit their offenses on or after October 1, 2011.  (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 52 (*Rajanayagam*).)  Consistent with that plain expression, we interpret the most recent version of section 4019 as applying only to defendants who committed their offenses on or after October 1, 2011.  Defendant's crimes in the instant case were committed in May 2009.  Thus, the trial court correctly applied the prior version of section 4019 when calculating defendant's credits.

In regard to equal protection, Defendant contends equal protection requires his conduct credits be calculated at the same rate as inmates who committed crimes on or after October 1, 2011, because there can be no justification for awarding inmates conduct credits at different rates based on the days they committed their crimes.  We disagree.

Where a statute at issue distinguishes between classes of people but "neither touches upon fundamental interests nor is based on gender, there is no equal protection violation if the challenged classification bears a rational relationship to a legitimate state purpose.  [Citations.]" (*Rajanayagam*, *supra*, 211 Cal.App.4th at p. 53.)  The interest at issue in section 4019 is conduct credits or incentives to perform assigned work and comply with rules and regulations.  (*Id.* at pp. 54-55.)  This is not a fundamental

8

interest, and therefore, the issue is whether the separate treatment of the classes bears a rational relationship to a legitimate state interest. (*Id.* at pp. 53-54.)

The separate classifications at issue in section 4019 bear a rational relationship to the state interest in cost savings. (*Rajanayagam*, *supra*, 211 Cal.App.4th at p. 55.) In other words, section 4019 is rationally related to the objective of reducing prison spending, which was a primary purpose of the Realignment Act. (*Id.* at p. 49.) Thus, we conclude defendant's equal protection rights were not violated.

C.     THREE STRIKES REFORM ACT OF 2012

Defendant asserts he is automatically entitled to be resentenced under the Reform Act because his appeal was not final at the time the law became effective. We disagree.

We find the interpretation of the Reform Act set forth in *People v. Yearwood* (2013) 213 Cal.App.4th 161 (*Yearwood*) reflects the plain meaning of the Reform Act's language. In *Yearwood*, the Fifth District Court of Appeal concluded the Reform Act was intended to apply prospectively only and, therefore, people who were sentenced prior to the effective date of the Reform Act, but whose cases were pending appeal after the Reform Act became effective, could not automatically be resentenced (*id.* at p. 168); rather, they would have to petition the trial court for a reduced sentence (*id.* at p. 179).

In *In re Estrada* (1965) 63 Cal.2d 740, the court held that where a statute has been amended to lessen the punishment for an offense and there is no clear indication of an intent to apply the amendment prospectively only, it must be presumed that the Legislature intended the mitigated punishment to apply to all judgments not yet final as of the effective date of the amended statute. (*Id*. at pp. 744-747.) In *Yearwood*, the

9

appellate court concluded the *Estrada* rule is inapplicable to the Reform Act because the Reform Act's language is unambiguous, in that "voters intended a petition for recall of sentence to be the sole remedy available under the Act for prisoners who were serving an indeterminate life sentence imposed under the former three strikes law on the Act's effective date without regard to the finality of the judgment." (*Yearwood*, *supra*, 213 Cal.App.4th at p. 172.)

The appellate court further reasoned that applying the *Estrada* rule to the Reform Act was problematic when considering the Act as a whole because "[e]nhancing public safety was a key purpose of the Act," and "prospective-only application supports the Act's public safety purpose by reducing the likelihood that prisoners who are currently dangerous will be released from prison due to the Act." (*Yearwood*, *supra*, 213 Cal.App.4th at pp. 175-176.) The court explained that retroactive application of the Reform Act would "create a loophole whereby prisoners who were sentenced years before the Act's effective date are now entitled to [an] automatic sentencing reduction even if they are currently dangerous and pose an unreasonable public safety risk." (*Id.* at p. 176.)

We agree with the *Yearwood* opinion, in that the language of the Reform Act is unambiguous and reflects an intent on the part of the electorate to have the law apply prospectively only, thus making the *Estrada* rule inapplicable. We focus on the portion of Proposition 36, which set forth: "[*a*]*ny person* serving an indeterminate term . . . may file a petition for a recall of sentence, within two years after the effective date of the

10

act . . . .”[6]  (Italics added.)  (See *People v. Alanis* (2008) 158 Cal.App.4th 1467, 1475-1476 [a defendant's sentence commences after being sentenced by the trial court when s/he is committed to custody]; see also *People v. Howard* (1997) 16 Cal.4th 1081, 1087-1088 [discussing the difference between pre-commitment and post-commitment time periods].)  Given the "any person" language, it does not appear the electorate intended to create an exception for defendants who were serving their sentences but whose cases were pending appeal.  Thus, we conclude the *Yearwood* opinion is correct, in that the Reform Act would not provide defendant with automatic resentencing.  As a result, we conclude defendant is not entitled to automatic resentencing.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

I concur:

RAMIREZ
P. J.

---

**6** http://vig.cdn.sos.ca.gov/2012/general/pdf/text-proposed-laws-v2.pdf#nameddest=prop36, as of October 30, 2013.

11

HOLLENHORST, J., Concurring and Dissenting.

I respectfully concur in part and dissent in part. I concur with the majority's discussion of the use of defendant's 2004 convictions as strikes and application of Penal Code[1] section 4019; however, I disagree with the discussion of the Three Strikes Reform Act of 2012, Section 10 (Prop. 36, as approved by voter Ballot Pamp., Gen. Elec. (Nov. 6, 2012)) (hereafter the Reform Act or the act). The Reform Act became effective on November 7, 2012. (§§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C), 1170.126.)[2]

### 1. Proposition 36

Under the Three Strikes law as it existed before the passage of the Reform Act, a defendant with two or more strike priors who is convicted of any new felony would receive a sentence of 25 years to life. (Former § 667, subd. (e)(2)(A).) As amended, section 667 provides that a defendant who has two or more strike priors is to be sentenced pursuant to paragraph 1 of section 667, subdivision (e)—i.e., as though the defendant had only one strike prior—if the current offense is not a serious or violent felony as defined in section 667.5,

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] For convenience, I will refer solely to section 667, subdivision (e) in discussing the Reform Act, omitting reference to the substantially identical section 1170.12, subdivision (c). However, the analysis applies to both sections 667 and 1170.12.

1

subdivision (c) or section 1192.7, subdivision (c), unless certain disqualifying

factors are pleaded and proven.[3]  (§§ 667, subds. (d)(1), (e)(2)(C).)

--------

[3]  Section 667, subd. (e)(2)(C) provides that second strike sentencing does not apply if the prosecution pleads and proves any of the following:

"(i) The current offense is a controlled substance charge, in which an allegation under Section 11370.4 or 11379.8 of the Health and Safety Code was admitted or found true.

"(ii) The current offense is a felony sex offense, defined in subdivision (d) of Section 261.5 or Section 262, or any felony offense that results in mandatory registration as a sex offender pursuant to subdivision (c) of Section 290 except for violations of Sections 266 and 285, paragraph (1) of subdivision (b) and subdivision (e) of Section 286, paragraph (1) of subdivision (b) and subdivision (e) of Section 288a, Section 311.11, and Section 314.

"(iii) During the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person.

"(iv) The defendant suffered a prior serious and/or violent felony conviction, as defined in subdivision (d) of this section, for any of the following felonies:

"(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.

"(II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286, or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289.

"(III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288.

"(IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive.

"(V) Solicitation to commit murder as defined in Section 653f.

"(VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245.

"(VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418.

"(VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death."

2

The Reform Act also provides a procedure that allows a person who is "presently serving" an indeterminate life sentence imposed pursuant to the Three Strikes law to petition to have his or her sentence recalled and to be sentenced as a second strike offender, if the current offense is not a serious or violent felony and the person is not otherwise disqualified. The trial court may deny the petition even if those criteria are met, if the court determines that resentencing would pose an unreasonable risk of danger to public safety. (§ 1170.126, subds. (a)-(g).) Accordingly, under section 1170.126, resentencing is discretionary even if the defendant meets the objective criteria (§ 1170.126, subds. (f), (g)), while sentencing under section 667, subdivision (e)(2)(C) is mandatory, if the defendant meets the objective criteria.

Defendant requests that the matter be remanded for resentencing. Relying on *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), he contends section 667, subdivision (e)(2)(C) is an ameliorative sentencing statute which presumptively applies to all criminal judgments which were not yet final as of its effective date, and that there is nothing in the language of the Reform Act which overcomes the presumption.{Supp AOB 3, 5-8} The People oppose the request, arguing that the act allows persons like defendant, who are presently serving an indeterminate sentence but whose sentence under the act would not have been an indeterminate sentence, to file a petition for recall in the trial court.{Supp RB 1-2}

*2. Section 667, subdivision (e)(2)(C) Applies to Defendants Whose Judgments Were Not Yet Final on the Effective Date of the Reform Act.*

There is a general rule of statutory construction, embodied in section 3 of the Penal Code, that "'when there is nothing to indicate a contrary intent in a statute it will be presumed that the Legislature intended the statute to operate prospectively and not retroactively.' [Citation.]" (*People v. Floyd* (2003) 31 Cal.4th 179, 184 (*Floyd*).) In *Estrada*, *supra*, 63 Cal.2d 740, the California Supreme Court created a limited exception to that presumption. In that case, the court held that where a statute has been amended to lessen the punishment for an offense and there is no clear indication of an intent to apply the amendment prospectively only, it must be presumed that the Legislature intended the mitigated punishment to apply to all judgments not yet final as of the effective date of the amended statute. (*Id.* at pp. 744-747.) The court held: "'A legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law.'" (*Id*. at 745.) From this, "[i]t is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply," including those which are not yet final. (*Ibid*.)

The Legislature has never abrogated the *Estrada* rule. (See *People v. Nasalga* (1996) 12 Cal.4th 784, 792, fn. 7 (*Nasalga*).) The rule and its continued

4

vitality were most recently discussed by the California Supreme Court in *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*).)  In *Brown*, the court reiterated that *Estrada* "is today properly understood, not as weakening or modifying the default rule of prospective operation codified in section 3, but rather as informing the rule's application in a specific context by *articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments.*"  (*Brown*, *supra*, at p. 324, italics added.)

Despite the *Estrada* presumption, however, a court interpreting a statute that ameliorates punishment must nevertheless determine the intent of the Legislature or of the electorate in enacting the statute.  (*Floyd*, *supra*, 31 Cal.4th at p. 184.)  To determine intent, courts look first to the language of the provision, giving its words their ordinary meaning.  If that language is clear in relation to the problem at hand, there is no need to go further.  (*Ibid*.)  If the language is not clear, the tools of statutory construction must be applied, including but not limited to the *Estrada* rule.  If necessary, the court must also look to other extrinsic indicators of intention.  (*Nasalga*, *supra*, 12 Cal.4th at p. 794.)

There is no question that section 667, subdivision (e)(2)(C) is an amendment which ameliorates punishment under the Three Strikes law for those defendants who meet its criteria.  However, the Reform Act does not contain any explicit provision for retroactive or prospective application, and it does not

5

explicitly state what remedy—i.e., section 667, subdivision (e)(2)(C) or section 1170.126—applies to a person in defendant's position.  Consequently, we must "look for any other indications" to determine and give effect to the intent of the electorate.  (*Nasalga*, *supra*, 12 Cal.4th at p. 794.)

In enacting new laws, both the Legislature and the electorate are "presumed to be aware of existing laws and judicial construction thereof."  (*In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11.)  Accordingly, I presume that in enacting the Reform Act, the electorate was aware of the *Estrada* presumption that a law ameliorating punishment applies to all judgments not yet final on appeal on the effective date of the new statute.  I also presume the electorate was aware that a saving clause may be employed to make it explicit that the amendment is to apply prospectively only, and that in the absence of a saving clause or another clear signal of intent to apply the amendment prospectively, the statute is presumed to apply to all nonfinal judgments.  (*Nasalga*, *supra*, 12 Cal.4th at p. 793; *Estrada*, *supra*, 63 Cal.2d at p. 747.)  Previous ballot initiatives have employed explicit language making an ameliorative statute prospective.  For example, the California Supreme Court held that the previous Proposition 36, approved by voters on November 7, 2000, applied prospectively only, despite its ameliorative effect, because it expressly stated, "'Except as otherwise provided, the provisions of this act shall become effective July 1, 2001, and its provisions shall be applied prospectively.' [Citations.]" (*Floyd*, *supra*, 31 Cal.4th at pp. 183-185.)  The court

6

in *Floyd* held that the plain language of this saving clause trumped any other possible interpretation of the proposition. (*Id*. at pp. 185-187.) In the Reform Act, in contrast, the absence of such language is persuasive evidence that the electorate did intend to apply section 667, subdivision (e)(2)(C) to nonfinal judgments.

This construction, moreover, is fully consistent with the expressed purposes of the Reform Act. In *Floyd*, *supra*, 31 Cal.4th at pages 187 through 188, the court found further support in the ballot arguments in support of the proposition, which stated that "'[i]f Proposition 36 passes, nonviolent drug offenders *convicted for the first or second time after 7/1/2000*, will get mandatory, court-supervised treatment instead of jail.' (Ballot Pamp., Gen. Elec. (Nov. 7, 2000) argument in favor of Prop. 36, p. 26 . . . ." (Italics added.) The ballot arguments in support of the Reform Act stated that its purpose was to ensure that "[p]recious financial and law enforcement resources" were not diverted to impose life sentences for some nonviolent offenses, while assuring that violent repeat offenders are effectively punished and not released early. The proponents stated that the act would "help stop clogging overcrowded prisons with non-violent offenders, so we have room to keep violent felons off the streets" and "help[] ensure that prisons can keep dangerous criminals behind bars for life." An additional purpose was to save taxpayers "$100 million every year" by ending wasteful spending on housing and health care costs for "non-violent Three Strikes inmates." Moreover, the act would ensure adequate punishment of nonviolent repeat offenders by doubling

7

their state prison sentences.  The proponents pointed out that dangerous criminals were being released early because "jails are overcrowded with nonviolent offenders who pose no risk to the public."  And, the proponents stated that by passing Proposition 36, "California will retain the toughest recidivist Three Strikes law in the country but will be fairer by emphasizing proportionality in sentencing and will provide for more evenhanded application of this important law."  The proponents pointed out that "[p]eople convicted of shoplifting a pair of socks, stealing bread or baby formula don't deserve life sentences."  (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) argument in favor of Prop. 36 and rebuttal to argument against Prop. 36, <http://voterguide.sos.ca.gov/propositions/36/arguments-rebuttals.htm> [as of September 2013].)  Applying section 667, subdivision (e)(2)(C) to nonfinal judgments is wholly consistent with these objectives, in that doing so would enhance the monetary savings projected by the proponents and would further serve the purposes of reducing the number of nonviolent offenders in prison populations and of reserving the harshest punishment for recidivists with current convictions for serious or violent felonies, while still assuring public safety by imposing doubled prison terms on less serious repeat offenders.

For both of these reasons—the absence of any expressed intent to apply the act prospectively only and the stated intent underlying the proposition—I conclude

8

that section 667, subdivision (e)(2)(C) applies to judgments which were not final as of its effective date.

The first published appellate decision that addresses this issue is *People v. Yearwood* (2013) 213 Cal.App.4th 161 (*Yearwood*). In *Yearwood*, as in this case, the defendant would have been entitled to second strike sentencing under the Reform Act if he had been sentenced initially after the effective date of the Reform Act. He had already been sentenced and his appeal was pending on the date the act became effective. The court held that even though the judgment was not yet final, Yearwood's only remedy was to petition for recall of his sentence and for resentencing pursuant to section 1170.126. (*Yearwood*, *supra*, at pp. 167, 168, 169.)

The court concluded, as I have, that the Reform Act does not contain a saving clause or refer to retroactive or prospective application or refer explicitly to persons in Yearwood's position. Nevertheless, the court held, section 1170.126 unambiguously applies to prisoners whose judgments were not final on the Reform Act's effective date, because those prisoners were "presently serving" an indeterminate life term under the Three Strikes law. (See § 1170.126, subd. (a).) The court further held that section 1170.126 therefore effectively operates as the functional equivalent of a saving clause and, if section 667, subdivision (e)(2)(C) is read not in isolation but in the context of the entire statutory scheme, it is clear that the mandatory sentencing provision of section 667, subdivision (e)(2)(C) is

intended to operate prospectively only. (*Yearwood*, *supra*, 213 Cal.App.4th at p. 175.)

*Yearwood* is correct that even in the absence of an express saving clause there may be other reasons to determine that the enacting body intended the statute to apply prospectively only. *Brown*, *supra*, 54 Cal.4th 314, provides an example. In that case, the court held that an amendment to section 4019, which increased the rate at which prisoners may earn credits for good behavior, applied prospectively only, despite the absence of express language to that effect, because the purpose of section 4019 is to provide an incentive for good behavior during incarceration. Accordingly, rather than reflecting a determination that a reduced penalty for *past* criminal conduct satisfies the legitimate ends of criminal law, section 4019 addresses "*future conduct* in a custodial setting by providing increased incentives for good behavior." (*Brown*, *supra*, at p. 325.) Awarding the credit retroactively, for time spent in custody before the effective date of the amendment, would not further that purpose. Consequently, the court held, there is no logical basis for inferring that the Legislature intended the amended statute to apply retroactively, and the *Estrada* rule does not apply. (*Id.* at p. 325 & fn. 15.) The same is not true of the Reform Act, however. As I discussed above, retroactive application of section 667, subdivision (e)(2)(C) is consistent with the proponents' stated objectives of reducing prison overcrowding, reducing the resources expended on third strike offenders whose current and prior offenses are nonviolent and less

10

serious, and enhancing public safety by ensuring that the truly dangerous repeat offenders serve indeterminate life terms. Accordingly, there is a logical basis for inferring that the electorate intended the amendment to apply to nonfinal judgments.

Moreover, I do not agree with *Yearwood* that section 1170.126 unambiguously applies to defendants who were serving nonfinal third strike sentences on the effective date of the Reform Act. In light of the *Estrada* presumption and the absence of a saving clause in section 667, subdivision (e)(2)(C), the provision that section 1170.126, subdivision (a) applies "exclusively to persons presently serving" a third strike sentence *is* ambiguous—does it refer only to prisoners serving sentences that are final, or does it include those whose judgments are not final? It is certainly not so clear as to qualify as the functional equivalent of a saving clause. In *Nasalga*, *supra*, 12 Cal.4th 784, the California Supreme Court held that the rule of *Estrada* is "not implicated where the Legislature *clearly signals* its intent" to make an amendment prospective, "by the inclusion of either an express saving clause or its equivalent." (*Nasalga*, *supra*, at p. 793, italics added.) The court did not describe what constitutes an "equivalent" to an express saving clause. However, the court stated that in the absence of an express saving clause, the "'quest for legislative intent'" requires that "'the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.' [Citation.]" (*Ibid*.) In my opinion, the statutory

11

language that *Yearwood* relies on does not meet that requirement because it is ambiguous.  I note, too, that *Yearwood* does not cite a single case in which similarly ambiguous language was deemed to be the equivalent of a saving clause.

*Yearwood* finds support for its position in the ballot arguments in favor of the Reform Act.  It points out that enhancing public safety was a key purpose of the act.  (*Yearwood*, *supra*, 213 Cal.App.4th at p. 175.)  The court states that giving section 667, subdivision (e)(2)(C) prospective-only application furthers that purpose by reducing the likelihood that prisoners who are currently dangerous will be released from prison under the Reform Act.  In contrast with section 1170.126, section 667, subdivision (e)(2)(C) does not provide the court with discretion to impose a third strike sentence if it finds that the defendant poses an "unreasonable risk of danger to public safety."  (§ 1170.126, subd. (f).)  *Yearwood* points out that several years may elapse between sentencing and finality, and a defendant who might objectively qualify for second strike sentencing under section 667, subdivision (e)(2)(C) may have shown himself or herself to pose such a risk by misconduct during postsentencing incarceration.  (*Yearwood*, *supra*, at pp. 175-176.)

This is arguably a valid concern.  However, it is not reflected in the ballot arguments in support of the Reform Act.  I cannot say that a concern not expressed in a ballot argument is a clear indication of voter intent, no matter how valid the concern may be.  Moreover, a defendant may also be incarcerated for many

12

months before being convicted and sentenced for a third strike offense. Such a defendant may also display a propensity for violence or other conduct while incarcerated, which indicates that he or she poses a risk to public safety. Nevertheless, any qualifying defendant convicted and sentenced after the effective date of the Reform Act is entitled to sentencing under section 667, subdivision (e)(2)(C), and the trial court has no discretion to impose a third strike sentence even if the court has concerns about the defendant's future dangerousness for any reason, including the defendant's conduct while in custody. For this reason as well, I do not find *Yearwood*'s analysis persuasive.

*3. Conclusion*

I respectfully part company with the majority's conclusion that defendant is not entitled to a reduction in his sentence or resentencing because he retains the ability, under section 1170.126, to petition the trial court to recall his indeterminate sentence and to possibly resentence him to a determinate term. I conclude that in passing the Three Strikes Reform Act of 2012, the electorate intended the mandatory sentencing provision of sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C) to apply to qualifying defendants whose judgments were not yet final on the effective date of the act. Hence, I would vacate defendant's sentence and remand the matter to the trial court for resentencing.

HOLLENHORST          
J.

13