Filed 6/9/15  P. v. Whitehorn CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>MARCUS DSHAUN WHITEHORN,<br><br>　　　Defendant and Appellant. | E061273<br><br>(Super.Ct.No. RIF1305052)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Edward D. Webster, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Marcus Dshaun Whitehorn, in pro. per.; Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

**FACTUAL AND PROCEDURAL HISTORY**

A.    STATEMENT OF THE CASE

On February 3, 2014, an information charged defendant and appellant Marcus Dshaun Whitehorn with unlawful possession of a controlled substance, to wit, methamphetamine, a felony, under Health and Safety Code section 11377, subdivision (a) (count 1). The information further alleged that defendant was previously convicted of first degree burglary, a serious and violent felony, in violation of Penal Code section 459, within the meaning of Penal Code sections 667, subdivisions (c) and (e)(1), and 1170.12, subdivision (c)(1).

On April 2, 2014, the court held a *Marsden*[1] hearing. Defendant complained that he did not have enough time to speak with his public defender. The court continued the case for defendant and his public defender to have adequate time to speak. Thereafter, the court denied the *Marsden* motion.

On April 14 and 15, 2014, a jury trial was held. Defendant testified on his own behalf. Defendant admitted that he had the drugs in his possession. His only defense was that he took possession of the drugs for the sole purpose of disposing of them. The jury was instructed on the defense of transitory possession.

Defense counsel asked defendant why, after finding the drugs in his garage, he did not call the police. Defendant responded: "Truthfully, I never really been in a position to call the police, and, basically, calling the police just wasn't something that was—I was

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118.

programmed to do." Defense counsel then asked about the demographics of defendant's neighborhood. The prosecution objected; the court sustained the objection.

At a side bar, defense counsel argued that he was trying to establish defendant's state of mind for not calling the police. The court responded that counsel could ask defendant why he did not call the police and in general about his values. The court, however, told defense counsel that he could not ask about general ethnic breakdowns of neighborhoods as such questioning would not be fair to those neighborhoods. The court also stated that questions regarding how defendant grew up would allow the prosecution to spend a lot of time on cross-examination and that these issues would be marginally relevant. Thus, the court sustained the prosecution's objection on Evidence Code section 352 grounds. Later, the court stated on the record that if it had allowed defense counsel to ask about defendant's background, the prosecution would have been able to question defendant about his criminal background.

On April 15, 2014, the jury returned a guilty verdict for count 1, possession of methamphetamine under Health and Safety Code section 11377, subdivision (a).

On that date, a court hearing was held on the prior strike. The prosecution submitted evidence regarding the April 19, 2004, burglary conviction, including a chronological history and an abstract of judgment indicating that defendant had pled guilty to violation of Penal Code section 459, and had been sentenced to the midterm of four years. The court found the prior strike true.

On May 9, 2014, defense counsel filed a *Romero*[2] motion, which the prosecution opposed. On May 23, 2014, the court denied defendant's *Romero* motion, stating that defendant had a regular and ongoing criminal history. Moreover, the court noted that defendant had told his probation officer that he really had the methamphetamine to smoke with his girlfriend, admitting that he had perjured himself.

That same day, the trial court denied probation and sentenced defendant to the midterm of two years on count 1, which was doubled because of the strike prior, for a total of four years. The sentence was to run concurrent with the sentence in case No. RIF1000271, for which defendant was on probation at the time he was arrested in the instant offense. Defendant was given credit for 71 actual days and 70 days under Penal Code section 4019, for a total of 141 days.

The court ordered defendant to pay a restitution fine of $280, a parole revocation restitution fine of $280, a criminal conviction assessment of $30, and a court operations assessment fee of $40. The court found defendant unable to pay booking fees or to reimburse the county for attorney fees.

The court then denied probation for case No. RIF10002771, the case for which defendant was on probation at the time of his arrest in this case. That case involved a conviction for violating Penal Code section 211 (robbery). In case No. RIF10002771, the court sentenced defendant to the midterm of three years in state prison, to be served

---

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal. 4th 497, 917 P.2d 628.

4

concurrently with the sentence in this case. The court then awarded defendant 212 actual credits and 212 conduct credits under Penal Code section 4019.

On June 3, 2014, defendant filed this notice of appeal.

On November 3, 2014, defendant's appellate counsel filed a brief on behalf of defendant in accordance with the procedures outlined in *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738. On November 24, 2014, defendant filed a supplemental brief.

On January 5, 2015, we affirmed the trial court's decision. On January 12, 2015, defendant's appellate counsel filed a petition for rehearing arguing that Proposition 47 applied to defendant. We denied defendant's petition for rehearing on January 26, 2015.

On January 15, 2015, defendant filed a petition for resentencing with the trial court, which is still pending.

On February 5, 2015, defendant filed a petition for review with the California Supreme Court. On March 25, 2015, the Supreme Court granted defendant's petition and transferred the case back to this court to determine the retroactivity of Proposition 47. On April 10, 2015, defendant filed a supplemental brief.

B.     PROSECUTION EVIDENCE

On June 6, 2013, Officer Garcia responded to a call reporting suspicious activity on Lasselle Street, near the mailboxes by the front of the gated community. The caller described two suspects, one black and one white, both wearing hoodies and carrying flashlights.

When Officer Garcia arrived at the location near the mailboxes, he contacted defendant, a black man wearing a hoodie, who he believed fit the description. Defendant was alone and did not have a flashlight. Defendant told the officer he lived in the gated community. The officer never found anyone who fit the description of the white suspect identified by the caller.

Officer Garcia asked defendant if he was on parole or probation. When defendant stated that he was on probation, the officer detained defendant and asked for the terms of his probation. Defendant's probation contained search terms. The officer conducted a pat-down of defendant's outer clothing. During the search, defendant told the officer he had drugs in his right front pocket. The officer retrieved a plastic bag from the pocket; it contained a substance the officer believed to be methamphetamine. The officer then placed defendant under arrest.

Defendant told Officer Garcia that defendant had found the drugs in his garage 30 minutes earlier. Defendant did not tell the officer that his condominium had been burglarized, or that he was on his way to throw away the drugs. At the time of his arrest, defendant did not exhibit any symptoms of being under the influence.

The contents of the plastic bag were later identified as 1.58 grams of methamphetamine, a usable amount.

At the time of his arrest, defendant was on probation for grand theft. He had a 2010 conviction for felony grand theft and a 2004 felony conviction for breaking into a residence.

6

C.     DEFENSE EVIDENCE

On June 6, 2013, defendant returned to his home in a condominium complex in a gated community on Lasselle Street. He had been away from his home for about a week. Defendant had lived in that community since 2008.

Defendant noticed that the screen door to his condominium was off of its hinges and the garage door was up. He then realized his condominium had been ransacked. On the floor of his garage, defendant found an overturned tray, beer cans, beer bottles, a "peace pipe" for smoking methamphetamine, and a plastic bag containing drugs. These items did not belong to him. Defendant knew someone had been in his garage.

Defendant picked up the plastic bag with the drugs and put it in his pocket. He planned on throwing the drugs away. Defendant did not call the police or his neighbors. Defendant then went into his condominium to see if anyone was there or if anything had been taken. He noticed some missing items.

Defendant then exited the condominium to see if anyone was leaving the scene. He headed towards the mailboxes by the entrance to the community when he received a call on his cell phone. Defendant planned on throwing away the drugs in the dumpster.

At this point, defendant was stopped by a police officer who told defendant that he had received a call involving two suspects and asked if defendant was on probation. Defendant told the officer that he was on probation and that he had a rock on him. Defendant also told the officer that he found the rock in his garage and that his condominium had been burglarized. He asked the officer to investigate the burglary; the officer ignored defendant's request.

7

Defendant was wearing a black hoodie, but he did not have a flashlight and no knowledge of a white man with a hoodie and flashlight. Defendant was not able to throw the drugs away because the police officer found defendant before he was able to do so.

## DISCUSSION

On November 4, 2014, California voters approved Proposition 47, the "Safe Neighborhoods and Schools Act." In sum, Proposition 47: (1) requires a misdemeanor sentence instead of a felony sentence for certain drug possession offenses; (2) requires a misdemeanor sentence instead of a felony sentence for the crimes of petty theft, receiving stolen property, and forging/writing bad checks, when the amount involved is $950 or less; (3) allows a felony sentence (excluding a defendant from a misdemeanor sentence) for the crimes specified above if a defendant has a prior conviction listed under Penal Code section 667, subdivision (e)(2)(C)(iv), or a prior conviction for an offense requiring sex offender registration under Penal Code section 290; and (4) requires resentencing for defendants serving felony sentences for the crimes specified above unless the trial court finds an unreasonable public safety risk. (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, pp. 35, 70; see e.g., Pen. Code, §§ 459.5, subd. (a), 473, subd. (b), 476a, subd (b), 490.2, subds. (a), (b), 496, subd. (a), 666, subds. (a), (b); Health & Saf. Code, §§ 11357, subd. (a), 11377, subds. (a), (b).) The initiative became effective on November 5, 2014. (Cal. Const., art. II, § 10, subd. (a) ["an initiative statute or referendum approved by a majority of votes thereon takes effect the day after the election unless the measure provides otherwise].)

When assessing a claim under Proposition 47 on appeal, the first determination is whether the defendant was convicted of a felony offense that qualifies for misdemeanor sentencing. Here, defendant was convicted of possession of a controlled substance, to wit, methamphetamine, under Health and Safety Code section 11377, subdivision (a). Section 11377, as amended by Proposition 47, mandates that punishment for that crime shall not be more than one year in county jail. (Health & Saf. Code, § 11377, subd. (a).) Section 11377 lists methamphetamine as one of its many qualifying controlled substances. (Health & Saf. Code, § 11377, subd. (a).) Proposition 47 does not set a limit on the number of section 11377 convictions a defendant may have in order to receive misdemeanor sentencing.[3] (Health & Saf. Code, § 11377, subd. (a).) Defendant's conviction under section 11377, therefore, is a felony that qualifies for misdemeanor sentencing under Proposition 47.

The second determination is whether the defendant is excluded from misdemeanor sentencing under Proposition 47. Health and Safety Code section 11377, like the other qualifying offenses under Proposition 47, excludes from misdemeanor sentencing, and allows punishment under Penal Code section 1170, subdivision (h), when a defendant has one or more prior convictions for: (1) crimes listed under Penal Code section 667, subdivision (e)(2)(C)(iv), known as "super strike" offenses; or (2) offenses requiring sex offender registration under Penal Code section 290, subdivision (c). (Health & Saf. Code, § 11377, subd. (a).) Here, the record does not indicate that defendant has been

---

[3] The only repeat offense exclusion for a Proposition 47 qualifying offense involves writing bad checks under Penal Code section 476, subdivision (b).

9

convicted of any crimes that would exclude him from misdemeanor sentencing under Proposition 47.

The next determination is the issue in dispute on appeal: Whether defendant is entitled to a remand for automatic misdemeanor resentencing for his conviction under the newly modified Health and Safety Code section 11377, subdivision (a). To make this determination, we must assess Proposition 47's creation of Penal Code section 1170.18. Section 1170.18, states, in relevant part:

"(a) A person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance with Sections 11350, 11357, or 11377 of the Health and Safety Code . . . as those sections have been amended or added by this act.

"(b) Upon receiving a petition under subdivision (a), the court shall determine whether the petitioner satisfies the criteria in subdivision (a). If the petitioner satisfies the criteria in subdivision (a), the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor pursuant to Sections 11350, 11357, or 11377 of the Health and Safety Code, or Section 459.5, 473, 476a, 490.2, 496, or 666 of the Penal Code, [as] those sections have been amended or added by this act, unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety . . . .

10

"(c) As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."

Here, defendant argues, under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), that he is entitled to a remand to receive automatic misdemeanor resentencing under Health and Safety Code section 11377, subdivision (a).

Penal Code section 3[4] embodies the general rule of statutory construction that, when a statute does not have an express retroactivity provision, it will be presumed that the Legislature intended the statute to operate prospectively and not retroactively in the absence of clear extrinsic sources that the Legislature intended retroactive application. (*People v. Brown* (2012) 54 Cal.4th 314, 319; *People v. Floyd* (2003) 31 Cal.4th 179, 184.) Sharply departing from the language of Penal Code section 3, *Estrada* held that an amendatory act imposing a lighter punishment could be applied constitutionally to acts committed before its passage provided that the judgment convicting the defendant was not final.[5] (*People v. Brown*, at pp. 323-324; *People v. Floyd*, at p. 184; *Estrada*, *supra*, 63 Cal.2d at pp. 742-748.) *Estrada* is "properly understood, not as weakening or modifying the default rule of prospective operation codified in section 3, but rather as

---

[4] Penal Code section 3 states: "No part of it is retroactive, unless expressly so declared."

[5] A judgment is not final if the courts may provide a remedy on direct appellate review, including time within which to petition the United States Supreme Court for a writ of certiorari. (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 171-172.)

informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments." (*People v. Brown*, at p. 324.)

However, *Estrada* does not apply if there is an express savings clause or its equivalent in the statute. (*People v. Floyd*, *supra*, 31 Cal.4th at pp. 184-185; *People v. Nasalga* (1996) 12 Cal.4th 784, 793; *Estrada*, *supra*, 63 Cal.2d at p. 747.) When the Legislature repeals a statute but intends to save the rights of litigants in pending actions, it may do so with an express savings clause in repealing the statute. (*Bourquez v. Superior Court* (2007) 156 Cal.App.4th 1275, 1284.) However, an express savings clause is not required if the Legislature demonstrates its intention with sufficient clarity that a reviewing court can discern and effectuate it. (*People v. Yearwood, supra,* 213 Cal.App.4th at p. 173; *Bourquez v. Superior Court*, at p. 1284.)

The interpretation of a ballot initiative is governed by the same rules that apply to construing a statute enacted by the Legislature. (*People v. Park* (2013) 56 Cal.4th 782, 796.) First, the language of the statute is given its ordinary and plain meaning. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 901.) Second, the statutory language is construed in the context of the statute as a whole and within the overall statutory scheme to effectuate the voters' intent. (*Ibid.*) And, statute addressing the same subject matter and enacted at the same time should be construed together. (*People v. Honig* (1996) 48 Cal.App.4th 289, 327; *Stickel v. Harris* (1987) 196 Cal.App.3d 575, 590.) Third, where the language is ambiguous, the court will look to ""other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet."

12

[Citation.]' [Citation.]" (*Robert L. v. Superior Court*, at p. 901; *People v. Floyd*, *supra*, 31 Cal.4th at pp. 187-188.) Any ambiguities in an initiative statute are "not interpreted in the defendant's favor if such an interpretation would provide an absurd result, or a result inconsistent with apparent legislative intent." (*People v. Cruz* (1996) 13 Cal.4th 764, 783.) Ultimately, the court's duty is to interpret and apply the language of the initiative "so as to effectuate the electorate's intent." (*Robert L. v. Superior Court*, *supra*, 30 Cal.4th at p. 901.)

As to Proposition 47, there is 'no clear and unavoidable implication' of retroactivity. Therefore, under Penal Code section 3, it must be presumed that the voters intended Proposition 47 to operate prospectively and not retroactively.

Moreover, as noted *ante*, Penal Code section 1170.18, subdivision (a), states that, "A person currently serving a sentence for a conviction, . . . of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction." The ordinary and plain meaning of those words is that Penal Code section 1170.18 applies to any defendant who was serving a sentence for a Proposition 47 qualifying offense when that initiative became effective, regardless of whether the judgment of conviction was final. Penal Code section 1170.18 could have been drafted to apply only to defendants whose judgments were final before the proposition's effective date. It was not. There is no ambiguity. Hence, the finality of judgment is not determinative for purposes of Penal Code section 1170.18, subdivision (a), and it operates as the functional equivalent of a

13

savings clause giving amended Health and Safety Code section 11377, and other amended sections under the act, prospective-only application.

Furthermore, to the extent there is any ambiguity, that interpretation of Penal Code section 1170.18, subdivision (a), is consistent with the voters' intent in passing Proposition 47, as evidenced in the General Election Voter Information Guide for November 4, 2014. In the Official Title and Summary, it states that Proposition 47 "[r]equires resentencing for persons serving felony sentences for these offenses unless [the] court finds unreasonable public safety risk." (Voter Information Guide, *supra*, text of Prop. 47 at p. 34.) Under the title "Resentencing of Previously Convicted Offenders," it states, "[t]his measure allows offenders currently serving felony sentences for the above crimes to apply to have their felony sentences reduced to misdemeanor sentences." (*Id*. at p. 36.) It continues, "the measure states that a court is not required to resentence an offender currently serving a felony sentence if the court finds it likely that the offender will commit a specified severe crime." (*Ibid*.) Under the title "State Effects of Reduced Penalties," it states that, "the resentencing of inmates currently in state prison could result in the release of several thousand inmates." (*Ibid*.)

Additionally, in the official argument against Proposition 47, opponents argued: "*Prop. 47 will require the release of thousands of dangerous inmates*. Felons with prior convictions for armed robbery, kidnapping, . . . and many other serious crimes will be eligible for early release under Prop. 47. These early releases will be virtually mandated by Proposition 47. While Prop. 47's backers say judges will be able to keep dangerous offenders from being released early, this is simply not true. Prop. 47 prevents judges

14

from blocking the early release of prisoners except in very rare cases." (Voter Information Guide, *supra*, argument against Prop. 47 at p. 39.)

In the official rebuttal argument of Proposition 47, proponents of Proposition 47 responded: "*Proposition 47 does not require automatic release of anyone.* There is no automatic release. It includes strict protections to protect public safety and make sure rapists, murderers, molesters and the most dangerous criminals cannot benefit." (Voter Information Guide, *supra*, rebuttal to argument against Prop. 47 at p. 39.)

Thus, from the analysis and arguments from the voter guide, one of the major issues over Proposition 47 that was presented to the voters was whether dangerous criminals would be released automatically from custody. The voters were repeatedly assured by proponents that dangerous criminals would not be released because there was the safeguard of a trial court making a determination of an unreasonable risk to public safety. In fact, the voters were told that there would be no "automatic release." Proposition 47 proponents assured the public that those who were already incarcerated would not be granted automatic misdemeanor resentencing, and be released from incarceration. Instead, they could only be granted resentencing if a trial court determined each of the incarcerated was not an unreasonable risk to public safety. Because an incarcerated defendant's potential dangerousness is not related to whether his appeal is still pending, there is nothing in Proposition 47 to support defendant's argument that those already sentenced would receive automatic misdemeanor resentencing because their case was not final.

15

Therefore, we find that Health and Safety Code section 11377, and other amended sections under Proposition 47, have prospective-only application because there is "no clear and unavoidable implication" of retroactivity under Penal Code section 3. Moreover, the *Estrada* rule does not apply because Penal Code section 1170.18, subdivision (a), is the functional equivalent of a savings clause, and a prospective-only application is consistent with the public safety purpose of not granting misdemeanor resentencing without a determination of a defendant's risk of dangerousness.

Penal Code section 1170.18, subdivision (m), does not alter this conclusion. Section 1170.18, subdivision (m), states: "Nothing in this section is intended to diminish or abrogate any rights or remedies otherwise available to the petitioner or applicant."

To interpret Penal Code section 1170.18, subdivision (m), as allowing automatic resentencing would be to render subdivisions (a) and (b) surplusage because a defendant already sentenced for a Proposition 47 qualifying crime would not have to file, as subdivisions (a) and (b) require, a petition for recall of sentence. This would defy the basic principle of statutory construction that language should be construed in the context of the overall statutory scheme as a whole, and that significance should be given to every word, phrase, sentence, and part of an act pursuant to the legislative purpose. (*People v. Canty* (2004) 32 Cal.4th 1266, 1276-1277.) Penal Code section 1170.18, subdivision (m), simply protects defendants who have already been sentenced from being forced to choose between filing a petition for recall of sentence and pursuing remedies to which they may be entitled, such as filing an appeal or a petition for writ of habeas corpus. Penal Code section 1170.18, subdivision (m), does not have any impact on whether

16

amended Health and Safety Code section 11377, or other sections amended by Proposition 47, operate prospectively or retroactively.

Furthermore, a trial court does not have jurisdiction over a cause during the pendency of appeal as to anything that may affect the judgment. (*People v. Flores* (2003) 30 Cal.4th 1059, 1064; *People v. Johnson* (1992) 3 Cal.4th 1183, 1257.) Thus, a Penal Code section 1170.18 petition for recall of sentence under Proposition 47 must be filed once the judgment is final and jurisdiction of the case has been returned to the trial court. Here, defendant's eligibility for recall of sentence should be determined at that time. A petition for recall of sentence under Penal Code section 1170.18 can be filed within three years after the effective date of Proposition 47 or a later date upon a showing of good cause. (Pen. Code, § 1170.18, subd. (j).) The pendency of appellate proceedings and consequent lack of jurisdiction in the trial court would necessarily constitute good cause for a filing delay. (See *People v. Yearwood*, *supra*, 213 Cal.App.4th at p. 177 [appellate proceedings constitute good cause for delayed filing of a petition under Penal Code section 1170.126, subdivision (b), of the Three Strikes Reform Act of 2012].) Therefore, the length of the appellate process does not foreclose defendant from seeking relief by filing a petition for recall of sentence under Penal Code section 1170.18.

In conclusion, because defendant is currently serving a sentence for felony conviction that has changed to a misdemeanor under Proposition 47, he must file a petition for recall of sentence in the trial court after his judgment is final in the trial court to determine if he is excluded from Proposition 47 resentencing by posing an

17

unreasonable risk of danger to public safety. [6] In this case, we note that defendant has already filed a petition for resentencing with the trial court on January 15, 2015. We hereby order the trial court to make a ruling on defendant's petition after his judgment is final on appeal.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
                                                                                    J.

We concur:

RAMIREZ
                    P. J.

McKINSTER
                    J.

---

[6] We note that on February 18, 2015, the California Supreme Court granted review of *People v. Chaney* (2014) 231 Cal.App.4th 1391, review granted February 18, 2015, S223676, which held that the definition of "unreasonable risk of danger to public safety" from Proposition 47 does not apply retroactively to petitions for recall and resentencing under the Reform Act. On this same date, the California Supreme Court also granted review of *People v. Valencia* (2014) 232 Cal.App.4th 514, review granted February 18, 2015, S223825, which held that the literal meaning of section 1170.18, subdivision (c), as added by Proposition 47 does not comport with the purpose of the Reform Act, and applying it to resentencing proceedings under the Reform Act would frustrate, rather than promote, that purpose and the intent of the electorate in enacting both initiative measures.