Filed 5/21/21  P. v. Espey CA3
Opinion following rehearing

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C086379 |
| Plaintiff and Respondent, | (Super. Ct. No. 17F996) |
| v. | OPINION ON REHEARING |
| FLOYD JOSEPH ESPEY, | |
| Defendant and Appellant. | |

Defendant Floyd Joseph Espey pleaded no contest to bringing a controlled substance into jail and admitted that he suffered a strike prior conviction and a prison prior conviction.  On appeal, he contends:  (1) the trial court abused its discretion when it denied his *Romero*[1] motion to strike his strike prior conviction, and (2) he is entitled to a remand to allow the trial court to determine whether to grant him a mental health

---

[1]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

1

diversion under newly enacted Penal Code section 1001.36.[2]  We conclude the trial court did not abuse its discretion in denying defendant's *Romero* motion, but we will remand the matter to give the trial court the opportunity to consider whether he is eligible for diversion under section 1001.36.

Following the passage of Senate Bill No. 136, with the permission of the court, defendant filed a supplemental brief contending that his prior prison term enhancement must be vacated based on the retroactive application of Senate Bill No. 136.  We will modify the judgment to strike defendant's enhancement for the prison prior should the judgment be reinstated.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was arrested based on violations of his prior release supervision conditions.  Once in custody, defendant resisted the search and refused to comply with staff directives.  Defendant eventually produced an object wrapped in plastic from his anus, which tested presumptively positive for heroin and weighed 4.9 grams.  Defendant pleaded no contest to bringing a controlled substance into jail in violation of section 4573; he admitted that he suffered a strike prior conviction (§ 1170.12), and a prison prior conviction (§ 667.5, subd. (b)).  He agreed to the plea in exchange for a maximum sentencing lid of seven years (midterm of three years doubled plus a year for the prison prior).  During the change of plea hearing, the court noted defendant would have an opportunity to file a *Romero* motion to argue that he was outside the spirit of the three strikes scheme and therefore eligible for probation.

Defendant subsequently filed a *Romero* motion, asking the court to strike the punishment for his prior "strike" conviction for residential burglary.  (§§ 667, subd. (d), 1170.12, subd. (b).)  Defendant argued that the court should consider his background,

---

[2]  Undesignated statutory references are to the Penal Code.

character, and prospects to find him outside the spirit of the three strikes law. The exhibits included letters from defendant's mother explaining his family history and struggle with drug addiction, defendant's military service record, his disability records, and a certificate of completion of an anger management course. In its opposition to the motion, the prosecution argued that defendant fell within the spirit of the three strikes law because, following release from prison for his strike offense, he was convicted of four felonies evidencing a pattern of criminal behavior and continued threat to the community.

The probation department filed a presentence report recommending that defendant be sentenced as a strike defendant. The report noted that defendant was diagnosed with posttraumatic stress disorder (PTSD), bipolar disorder, and intermittent-explosive disorder 10 years earlier and was under psychiatric care. The report listed defendant's criminal history, which included his strike conviction for first degree burglary in 2006, a felony conviction for vandalism, a felony conviction for failure to appear while released on bail, and 10 misdemeanor convictions for petty theft, petty theft with a prior, and second degree burglary. The report concluded, "[T]his conviction is not less serious than the prior convictions, and he has not been free from incarceration and serious violation of the law for a substantial time."

At the hearing on his *Romero* motion, defendant testified that following his wife's murder, he developed an addiction to heroin to cope with his grief and PTSD. He claimed that he brought the heroin into prison so he would not "be sick." On cross-examination, defendant conceded he had been separated from his wife for at least 10 years at the time of her murder. The trial court denied defendant's *Romero* motion, concluding that his case was not in the spirit of *Romero* and noting that defendant was dishonest with the court when he testified that the reason for his criminal history and drug addiction was his wife's death when in fact they had been estranged for over a decade. The court found that his primary motivation was to avoid prison. Concluding that the circumstances in aggravation outweighed those in mitigation, the court declined to strike

3

the strike offense and sentenced defendant to an aggregate term of seven years in state prison, including one year for the prison prior enhancement.

## DISCUSSION

### I

### *Romero Motion*

Defendant contends the trial court abused its discretion in denying his *Romero* motion to strike his qualifying prior strike. (See *Romero, supra*, 13 Cal.4th at pp. 529-530.) He argues that because his strike offense was over 11 years old and nonviolent, he falls outside the spirit of the three strikes law. We are not persuaded.

A trial court has the discretion to dismiss strike conviction allegations in the interests of justice under section 1385, subdivision (a). (*Romero, supra*, 13 Cal.4th at p. 504.) In deciding whether to exercise its discretion to dismiss strike allegations, the trial court must determine whether the defendant should be deemed outside the spirit of the three strikes law "and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) In making this determination, the court must consider three factors: (1) the nature and circumstances of his present felonies; (2) the nature and circumstances of his strike offenses; and (3) the particulars of the defendant's background, character, and prospects for the future. (*Ibid*.)

We review the trial court's decision for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither

4

authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376-377.)

Here, the trial court properly exercised its discretion in denying defendant's *Romero* motion. The authorities defendant cites are inapposite. Defendant cites two cases where the People challenged the trial court's exercise of its discretion in striking a strike on appeal and the appellate court concluded the trial court's exercise of its discretion was permissible. (*People v. Bishop* (1997) 56 Cal.App.4th 1245, 1247-1250; *People v. Garcia* (1999) 20 Cal.4th 490, 499-501.) Because of the procedural posture in these cases and the deferential standard of review on appeal from the trial court's decision whether to strike a strike prior conviction, defendant is not similarly situated to the defendants in cases where a trial court exercised its discretion in their favor. While defendant argues that he does not fall within the spirit of the three strikes law because his criminal history is nonviolent, he does not cite any authority for the proposition that his nonviolent record alone entitles him to relief. Indeed, section 1170.12, subdivision (a) specifically provides that a strike offense is a "prior serious *and/or* violent felony." (Italics added.) It is not necessary that defendant have a violent criminal history to fall within the three strikes scheme. Further, the trial court found that defendant was not truthful about the source of his addiction and criminal history, and the court found that defendant was dishonest in an attempt to avoid state prison. Defendant has failed to clearly show that the sentencing decision was irrational or arbitrary. The court was well aware of its discretion and reasonably exercised it in considering defendant's arguments and determining that he fell within the three strikes law.

## II

### *Mental Health Diversion*

In supplemental briefing, defendant argues this matter must be remanded to give the trial court the opportunity to consider granting him mental health diversion as authorized by section 1001.36, which became effective June 27, 2018. (Stats. 2018, ch. 34, § 24.)

Section 1001.36 authorizes a trial court to grant "pretrial diversion," a postponement of prosecution to allow the defendant to undergo mental health treatment, if the defendant meets specified requirements. (§ 1001.36, subds. (a), (c).) Successful completion of diversion results in the dismissal of the original charges. (§ 1001.36, subd. (e).) Section 1001.36, subdivision (b)(1) identifies the pertinent criteria, including that "defendant suffers from a mental disorder" and that the "mental disorder was a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(1)(A), (B); see also *People v. Frahs* (2018) 27 Cal.App.5th 784, 789-790, affd. (2020) 9 Cal.5th 618.)

The People argue that section 1001.36 is inapplicable to already-adjudicated matters. But defendant urges retroactive application, citing *Frahs, supra*, 27 Cal.App.5th 784, which was recently affirmed by the California Supreme Court in *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*). Defendant also cites *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) and *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299 (*Lara*).

Whether a particular statute is intended to apply retroactively is a matter of statutory interpretation. (See *Lara, supra*, 4 Cal.5th at p. 307 [noting "the role of the court is to determine the intent of the Legislature"].) In general, new criminal legislation is presumed to apply prospectively unless the statute expressly declares a contrary intent. (§ 3.) However, where the Legislature has reduced punishment for criminal conduct, an inference arises under *Estrada* " 'that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly

6

as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' [Citations.]" (*Lara*, at p. 308.) Conversely, the *Estrada* rule " 'is not implicated where the Legislature clearly signals its intent to make the amendment prospective, by the inclusion of an express saving clause or its equivalent.' [Citation.]" (*People v. Floyd* (2003) 31 Cal.4th 179, 185, italics omitted.)

While *Estrada* involved the reduction in punishment for a specific offense (*People v. Brown* (2012) 54 Cal.4th 314, 323), this rule was applied in *Lara* to a specific class of individuals, juvenile offenders (*Lara, supra*, 4 Cal.5th at p. 308). *Lara* reasoned *Estrada* retroactivity applied to the class of juveniles because "[t]he possibility of being treated as a juvenile in juvenile court—where rehabilitation is the goal—rather than being tried and sentenced as an adult can result in dramatically different and more lenient treatment" for that juvenile class. (*Lara,* at p. 303.) Finding nothing to rebut the *Estrada* inference, *Lara* applied Proposition 57 retroactively to every juvenile "charged directly in adult court whose judgment was not final at the time [Proposition 57] was enacted." (*Lara*, at pp. 303-304.)

Like *Lara*, "[t]here is no dispute here that section 1001.36 confers a potentially ameliorative benefit to a specified class of persons, i.e., defendants with certain diagnosed mental disorders." (*People v. Weaver* (2019) 36 Cal.App.5th 1103, 1117, review dism. July 29, 2020, S257049; § 1001.36, subds. (a), (e).) In *Frahs*, our Supreme Court concluded *Estrada*'s inference of retroactivity applies to section 1001.36 such that defendants with qualifying mental disorders whose cases are not yet final are entitled to limited remand for the trial court to determine whether they are eligible for mental health diversion. (*Frahs, supra*, 9 Cal.5th at pp. 624-625.) The court concluded "the possibility of being granted mental health diversion rather than being tried and sentenced 'can result in dramatically different and more lenient treatment.' [Citation.]" (*Id.* at p. 631.) The court therefore concluded "the ameliorative nature of the diversion program places it

squarely within the spirit of the *Estrada* rule," and thus the program retroactively applies to defendants whose cases are not yet final. (*Ibid.*) That is the case for defendant here.

The *Frahs* court further rejected the People's argument the defendant there was not entitled to remand because he did not make an adequate showing of eligibility. (*Frahs, supra*, 9 Cal.5th at pp. 637-638.) The People argued the defendant had to demonstrate he met all six threshold eligibility requirements before the appellate court could remand. (*Ibid.*) The court found imposing such a high bar for remand "would be unduly onerous and impractical" and "inconsistent with any sensible retroactive application of the statute." (*Id.* at p. 638.) Instead, the court concluded "a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when, as here, the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder [citation]." (*Id*. at p. 640.)

The People claim in supplemental briefing that even if section 1001.36 must be applied retroactively to defendant's case, "[r]emand is futile because the trial court showed that it would not admit [defendant] to diversion when it declined to strike his prior conviction and sentenced him to the maximum allowed under the plea bargain." We disagree. The record here affirmatively discloses that defendant meets at least one of the threshold requirements for relief under section 1001.36, namely, he was diagnosed with two qualifying mental health disorders, bipolar disorder and PTSD. (See § 1001.36, subd. (b)(1)(A).) While the trial court found defendant was untruthful about his wife's death being the primary motivation for his addiction and criminal acts, the record does not clearly show that the trial court would have concluded that defendant's mental disorders were not a significant factor in the commission of the charged offense under section 1001.36, subdivision (b)(1). Even if defendant lied about the root cause of his PTSD, it does not necessarily follow that his diagnosed PTSD and bipolar disorder were not significant factors in his decision to bring heroin into jail. Accordingly, we cannot

8

clearly determine that remand is futile on the record before us. We must conditionally reverse and remand to the trial court for a diversion eligibility hearing.

III

*Senate Bill No. 136*

In his supplemental brief, defendant claims his prior prison term enhancement must be vacated based on the retroactive application of Senate Bill No. 136. The People agree.

On October 8, 2019, the Governor signed Senate Bill No. 136 (2019-2020 Reg. Sess.), which amended section 667.5, effective January 1, 2020 (Stats. 2019, ch. 590, § 1) (Senate Bill 136). Senate Bill 136 narrowed eligibility for the one-year prior prison term enhancement to those who have served a prior prison sentence for a sexually violent offense, as defined. The amended provision states in pertinent part: "Except where subdivision (a) applies, where the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code, provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of five years in which the defendant remained free of both the commission of an offense which results in a felony conviction, and prison custody or the imposition of a term of jail custody imposed under subdivision (h) of Section 1170 or any felony sentence that is not suspended." (§ 667.5, subd. (b).)

In this case, defendant's prior prison term was for failure to appear, which is not a sexually violent offense under Welfare and Institutions Code section 6600, subdivision (b). Defendant is therefore entitled to the ameliorative benefit of the statute if Senate Bill 136 is applied retroactively. We agree with the parties that the amendment to Senate Bill

9

136 should be applied retroactively in this case. Whether a particular statute is intended to apply retroactively is a matter of statutory interpretation. (See *Lara, supra,* 4 Cal.5th at p. 307 [noting "the role of the court is to determine the intent of the Legislature"].) Generally speaking, new criminal legislation is presumed to apply prospectively unless the statute expressly declares a contrary intent. (§ 3.) However, where the Legislature has reduced punishment for criminal conduct, an inference arises under *Estrada* " 'that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' [Citations.]" (*Lara*, at p. 308.) "A new law mitigates or lessens punishment when it either mandates reduction of a sentence or grants a trial court the discretion to do so. [Citation.]" (*People v. Hurlic* (2018) 25 Cal.App.5th 50, 56.)

Senate Bill 136 narrowed who was eligible for a section 667.5, subdivision (b) prior prison term enhancement, thus rendering ineligible many individuals, including defendant. There is nothing in the bill or its associated legislative history that indicates an intent that the court not apply this amendment to all individuals whose sentences are not yet final. Under these circumstances, we conclude *Estrada*'s inference of retroactive application applies. (See, e.g., *People v. Nasalga* (1996) 12 Cal.4th 784, 797-798 [applying *Estrada* inference of retroactivity to legislative changes to § 12022.6, subds. (a) and (b) enhancements].) Accordingly, we will direct the trial court to modify the judgment to strike defendant's prior prison term enhancement should his convictions and sentence be reinstated.[3]

---

[3] We note that in *People v. Stamps* (2020) 9 Cal.5th 685, the Supreme Court addressed another ameliorative statute, Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill 1393), which amended subdivision (a) of section 667. The Supreme Court concluded that where the defendant has entered into a plea agreement and has pleaded guilty in exchange for a specific prison term, and there is no indication that the Legislature "intended to overturn long-standing law that a court cannot unilaterally

10

DISPOSITION

The judgment is conditionally reversed. The matter is remanded to the trial court with directions to hold a diversion eligibility hearing to determine whether to grant defendant diversion under that statute. If the trial court determines that defendant qualifies for diversion under section 1001.36, then the court may grant diversion. However, if the court determines that defendant is ineligible for diversion or fails to successfully complete the diversion program, then his convictions and sentence shall be

---

modify an agreed upon term [of the negotiated plea agreement] by striking portions of it" (*Stamps,* at p. 701), the proper remedy is to remand to allow the defendant to decide whether to seek the trial court's exercise of its newly granted discretion to strike the serious felony enhancement; if, on remand, the defendant seeks the trial court's exercise of its discretion and the court decides to strike the enhancement, the prosecution should be offered the option to accept the modification of the plea bargain to reflect the lower sentence or to withdraw from the agreement entirely. (*Id.* at pp. 706-707.) In addition, if the trial court decides to strike the serious felony enhancement, the court may also choose to withdraw its approval of the plea agreement. (*Id.* at p. 708.) There is some disagreement among the Courts of Appeal as to whether the analysis in *Stamps* applies to Senate Bill 136 cases. (Compare *People v. France* (2020) 58 Cal.App.5th 714, 728-729, review granted Feb. 24, 2021, S266771 [reasoning that *Stamps* is distinguishable because Senate Bill 136 does not give a trial court discretion to unilaterally strike any enhancement], with *People v. Hernandez* (2020) 55 Cal.App.5th 942, 944-945, 946-948, review granted Jan. 27, 2021, S265739 [allowing the People to withdraw from a plea agreement when a one-year enhancement is stricken pursuant to Senate Bill 136].) However, we need not reach that issue here because this case does not involve a plea agreement for which a stipulated sentence is one of the material terms of the negotiated agreement between the prosecution and the defendant. Rather, the trial court set a maximum term to which defendant could be sentenced, or a "lid," in exchange for defendant's agreement to plead guilty to the entirety of the information. Because this case does not involve a plea agreement with a stipulated sentence, we conclude that the portion of *Stamps* discussing the appropriate remedy in a situation that involves a plea agreement with a stipulated sentence is inapplicable.

11

reinstated. Should his convictions and sentence be reinstated, the trial court is directed to modify the judgment to strike defendant's section 667.5, subdivision (b) prior prison term enhancement.


/s/
BLEASE, Acting P. J.


We concur:


/s/
ROBIE, J.


/s/
KRAUSE, J.